# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

**JORDAN M. HERNANDEZ,**

                         **Plaintiff,**                         **Civil No.  1:15-cv-01079**

        **vs.**

**PITCO FRIALATOR, INC.**

                 **Defendant.**
_____


=============================================================

## DEFENDANT PITCO FRIALATOR, INC.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

=============================================================




June 29, 2018




Susan E. Van Gelder                 P. Shawn Wood admitted *pro hac vice*
**GOLDBERG SEGALLA LLP**            **SEYFARTH SHAW LLP**
665 Main Street, Suite 400          233 S. Wacker Drive, Suite 8000
Buffalo, NY  14203                  Chicago, IL  60606
(716) 566-5400                       (312) 460-5000
svangelder@goldbergsegalla.com      swood@seyfarth.com

*Attorneys for Defendant* PITCO Frialator, Inc.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ........................................................................................................... 7

    I.    Summary Judgment Standard ................................................................... 7

    II.    Plaintiff Cannot Establish Causation. ..................................................... 8

    III.    Plaintiff's Duty To Warn Claim Fails As A Matter of Law ............................ 9

    IV.    Plaintiff Has No Evidence Of Any Manufacturing Defect.............................. 13

    V.    Plaintiff's Design Defect Claims Likewise Fail. ............................................ 14

    VI.    Plaintiff Can Establish No Valid Claim For Breach Of Warranty ................. 21

        A.    Plaintiff's Warranty Claims Are Time Barred ..................................... 21

        B.    Plaintiff Failed To Identify Any Express Warranty He Relied Upon In This Case.................................................................................. 22

        C.    Plaintiff Has No Evidence Of Breach Or Causation. ........................... 23

    VII.    Plaintiff's Failure to Recall or Retrofit Claim Fails Because No Such Cause of Action Exists Under New York Law................................................. 24

CONCLUSION...................................................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adams v. Genie Indus., Inc.*,
  14 N.Y.3d 535, 903 N.Y.S.2d 318 (2010) .......................................................24

*Anderson v. Bungee Int'l Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999) ..............................................................11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................7, 8

*Barban v. Rheem Textile Sys., Inc.*,
  No. 01 Civ. 8475, 2005 WL 387660 (E.D.N.Y. Feb. 11, 2005), *aff'd*, 147
  Fed. Appx. 222 (2d Cir. 2005) ...................................................................18, 19

*Bazerman v. Gardall Safe Corp.*,
  203 A.D.2d 56, 609 N.Y.S.2d 610 (1st Dep't 1994) ......................................12

*Belling v. Haugh's Pools, Ltd.*,
  126 A.D.2d 958, 511 N.Y.S.2d 732 (4th Dep't 1987) ....................................12

*Bellinger v. Deere & Co.*,
  881 F. Supp. 813 (N.D.N.Y. 1995) .................................................................12

*Bourassa v. Black & Decker (U.S.) Inc., et al*,
  2015 WL 4715250 (N.D.N.Y. Aug. 7, 2015) .................................................20

*Brooks v. Outboard Marine Corp.*,
  234 F. 3d 89 (2d Cir. 2000) ............................................................................20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..........................................................................................7

*Cochran v. Brinkmann Corp.*,
  2009 WL 4823854 (N.D. Ga. Dec. 9, 2009), *aff'd*, 381 Fed. Appx. 968
  (11th Cir. 2010) ...............................................................................................12

*Daubert v. Merrell Down Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ...................................................................................16, 20

*Davis v. New York City Housing Authority*,
  246 A.D.2d 575, 668 N.Y.S.2d 391 (2d Dep't 1998) .....................................22

*Denny v. Ford Motor Co.*,
  87 N.Y.2d 248, 639 N.Y.S.2d 250 (1995) ......................................................23

*Fernandez v. Cent. Mine Equip. Co.*,
  670 F. Supp. 2d 178 (E.D.N.Y. 2009) ...........................................................17

*Frisbee v. Cathedral Corp.*,
  283 A.D.2d 806, 725 N.Y.S.2d 806 (3d Dep't 2001) .......................................11

*Fuller v. Summit Treestands, LLC*,
  No. 07-CV-00330(A)(M), 2009 WL 1874058 (W.D.N.Y. May 11, 2009),
  *adopted*, 07-CV-330A, 2009 WL 1874057 (W.D.N.Y. June 30, 2009).........................23

*G.E. Capital Corp. v. A.O. Smith Corp.*,
  01 Civ. 1849, 2003 WL 21498901 (S.D.N.Y. July 1, 2003) .......................................13, 14

*Gonzalez v. Morflo Indus., Inc.*,
  931 F. Supp. 159 (E.D.N.Y. 1996) ...........................................................15, 16

*Hanlon v. Gliatech, Inc.*,
  CV-07-1737 SJF AKT, 2008 WL 4773430 (E.D.N.Y. Oct. 27, 2008) ............................21

*Heller v. U.S. Suzuki Motor Corp.*,
  64 N.Y.2d 407, 488 N.Y.S.2d 132 (1985) .......................................................21

*Horowitz v. Stryker Corp.*,
  2009 WL 436406 (E.D.N.Y. 2009).............................................................23

*Lamb v. Kysor Indus. Corp.*,
  305 A.D.2d 1083, 759 N.Y.S.2d 266 (4th Dep't 2004) .....................................11

*Licorish v. L'Oreal USA, Inc.*,
  36 Misc.3d 133(A) (App. T. 1st Dep't 2012) ....................................................24

*Liriano v. Hobart Corp.*,
  92 N.Y.2d 232, 677 N.Y.S.2d 764 (1998) .......................................................11

*Luciano v. Trans World Airlines, Inc.*,
  No. 96-cv-3999, 1998 WL 433808 (E.D.N.Y. July 28, 1998).............................9

*In re M/V MSC FLAMINIA*,
  No. 12-CV-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017) ....................16, 17

*Macaluso v. Herman Miller, Inc.*,
  01 CIV. 11496, 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) ............................23

*Matsushita Elec. Indus. Co., Ltd. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..............................................................................7

*Merced v. Auto Pak Co.*,
  533 F.2d 71 (2d Cir. 1976).......................................................................9

*Miccio v. Conagra Foods, Inc.*,
  224 F. Supp. 3d 200 (W.D.N.Y. 2016) ............................................................13

*Colon ex rel. Molina v. BIC USA, Inc.*,
  199 F. Supp. 2d 53 (S.D.N.Y. 2001)..........................................................9, 13

*Nealy v. United States Surgical Corp.*,
  587 F. Supp. 2d 579 (S.D.N.Y. 2008)..............................................................23

*Orkin Exterminating Co. v. Dawn Food Products*,
  366 S.E.2d 792 (Ga. App. 1988)........................................................12, 15, 24

*Orlando v. Novurania of Am., Inc.*,
  162 F. Supp. 2d 220 (S.D.N.Y. 2001)...............................................................21

*Parker v. Sony Pictures Entm't, Inc.*,
  260 F.3d 100 (2d Cir. 2001)..................................................................................7

*Pinello v. Andreas Stihl AG & Co.*,
  No. 8:08:-CV-0452, 2011 WL 1302223 (N.D.N.Y. March 31, 2011) ...........14, 20, 22, 23

*Quiles v. Bradford-White Corp.*,
  10-CV-747, 2012 WL 1355262 (N.D.N.Y. Apr. 18, 2012)......................24, 25

*Quintanilla v. Komori Am. Corp.*,
  2007 WL 1309539, *aff'd* 2009 WL 320186 (2d Cir. 2009)..............................20

*Rainbow v. Albert Elia Bldg. Co., Inc.*,
  79 A.D.2d 287, 436 N.Y.S.2d 480 (4th Dep't 1981) .......................................13

*Rock v. Oster Corp.*,
  810 F. Supp. 665 (D. Md. 1991) ................................................................10, 16

*Saladino v. Stewart & Stevenson Srvcs., Inc.*,
  01-CV-7644, 2007 WL 4285377 (E.D.N.Y. Dec. 3, 2007)...............................22

*Schiller v. Nat'l Presto Indus., Inc.*,
  225 A.D.2d 1053, 639 N.Y.S.2d 217 (4th Dep't 1996)....................................12

*Schrader v. Sunnyside Corp.*,
  297 A.D.2d 369, 747 N.Y.S.2d 26 (2d Dept. 2002) ........................................21

*Solorio v. Asplundh Tree Expert Co.*,
  No. 02 Civ. 8035, 2009 WL 755362 (S.D.N.Y. Mar. 23, 2009) ......................17

*Squitieri v. City of New York*,
  248 A.D.2d 201, 669 N.Y.S.2d 589 (1st Dep't 1998) ....................................8, 16

iv

*Thornhill v. A.B. Volvo*,
   304 A.D.2d 651, 757 N.Y.S.2d 598 (2d Dep't 2003) ........................................................8

*Tinnell v. Invacare Corp.*,
   819 F. Supp. 2d 192 (W.D.N.Y. 2011) ............................................................................21

*Toole v. Toshin Co, Ltd.*,
   00-CV-821S, 2004 WL 2202580 (W.D.N.Y. Sept. 29, 2004).........................11, 13, 21, 22

*Valente v. Textron, Inc.*,
   931 F. Supp. 2d 409 (E.D.N.Y. 2013) .............................................................................20

*Vanata v. Delta Intern. Machine Corp.*,
   269 A.D.2d 175, 702 N.Y.S.2d 293 (App. Div. 1st Dep't 2000) ....................................22

*Viviano v. Keycorp.*,
   128 A.D.3d 811, 9 N.Y.S.3d 154 (2d Dep't 2015) ...........................................................9

*W. World Ins. Co. v. Stack Oil, Inc.*,
   922 F.2d 118 (2d Cir. 1990).............................................................................................8

*Warlikowski v. Burger King Corp.*,
   9 A.D.3d 360, 780 N.Y.S.2d 608 (2d Dep't 2004) .................................................. *passim*

**Statutes**

N.Y. Educ. Law § 7201 ......................................................................................................17

N.Y. Educ. Law § 7202 ......................................................................................................17

New York Uniform Commercial Code, Section 2-725 .........................................................21

**Other Authorities**

Fed. R. Civ. P. 56...............................................................................................................25

Fed. R. Civ. P. 56(c) ............................................................................................................7

Fed. R. Civ. P. 56(e) ............................................................................................................7

Rule 702.............................................................................................................................20

## INTRODUCTION

The present case involves a plaintiff who wheeled a deep fryer containing hot cooking oil around the kitchen of a Chipotle restaurant, pushed the fryer over, fell on top of it, and burned himself.  The conduct of Plaintiff Jordan Hernandez ("Plaintiff") in moving the fryer while it contained hot oil was in direct violation of the product warnings, which he admits he never bothered to read.  During his deposition, Plaintiff blamed his former employer, Chipotle, for the incident, insisting he received inadequate training and faulty workplace instruction.  Based on exclusivity of worker's compensation remedies, however, Plaintiff has not sued his former employer.  Instead, he filed this lawsuit attempting to impose liability on the manufacturer of the deep fryer, Pitco Frialator, Inc. ("Pitco").

Summary judgment should be granted in this case.  Plaintiff alleged in his Complaint that he moved the deep fryer containing hot cooking oil to "a location in the restaurant where he could power wash it" and that the wheels of the fryer "became locked" as he moved it back to its location in the battery of appliances where it is operated.  (Pitco's Statement of Undisputed Facts ("Pitco SOF") at ¶¶ 1-2.)  At his deposition, Plaintiff testified that he did not power wash the fryer (or clean the fryer in any way), and significantly, that he does not know whether any wheel became locked or whether he struck something on the floor when he pushed the fryer over and fell on it.  (*Id.* at ¶¶ 13, 15.)   The wheels were not preserved for inspection, there were no other eyewitnesses, there are no photos to document the conditions at the incident scene, and Plaintiff has identified no evidence to establish causation.

Plaintiff admits that there was a bright blue and yellow sticker on the front of the fryer warning him not to move the fryer unless hot liquids were drained, but he never bothered to read the warning, and he did not follow it.  (Pitco SOF at ¶¶ 18-23.)  He concedes he did not

read any of the warnings on the fryer or in the manual (which specifically and repeatedly warned not to move the fryer when it has hot liquid in it).  (*Id.* at ¶¶ 18-30.) Plaintiff admits that he required employees to read these same warnings after he became kitchen manager to make sure they were operating the fryer safely at the restaurant.  (*Id.* at ¶ 31.)  Plaintiff also concedes he had worked in several restaurant kitchens, that he had received training on the safe use of fryers, and he understood the dangers associated with moving a fryer containing hot oil. (*Id.* at ¶ 32.)  No valid warnings claim exists where, as here, a plaintiff fails to read and blatantly violates a product's warnings, and concedes he understood an open and obvious danger.  And combined with his failure to identify any warnings expert or any expert opinion regarding product warnings, Plaintiff has no valid failure to warn claim in this case.

Plaintiff's manufacturing defect claims similarly fail.  A manufacturing defect only exists where the Plaintiff introduces evidence showing that the product was not manufactured as designed and that this deviation caused the injury at issue.  Here, Plaintiff concedes he was not only moving the fryer while it contained hot cooking oil that had not been drained (or even allowed to cool), but he did not observe any wheel lock, and that the incident may have occurred due to some obstruction that he struck while engaged in this activity. Plaintiff did not preserve the wheels for inspection, and he has not identified any expert who tested or inspected the wheels (or any other part of the subject unit) at any time, or who has identified any manner in which the fryer was not manufactured as designed.  Summary judgment, accordingly, should be granted on Plaintiff's manufacturing defect claim.

Plaintiff's design defect theory fares no better.  Plaintiff's Complaint reflected only conclusory allegations regarding design defect, vaguely alleging the fryer wheels "became locked."  After Plaintiff failed to preserve the wheels for inspection, and no one, including

the Plaintiff, could attest whether the wheels ever became locked, he abandoned this central theory of his case.  He then produced an "expert" report, from an individual who never inspected the subject fryer or any Pitco fryer, who is not a professional engineer, who has no experience in the fryer design, who admits he performed no testing or calculations, and who remarkably testified that he is only offering general "concepts" rather than expert opinions because, in his own words: "***I don't know that much about the design of the fryer.***"  (*Id.* at¶ 64.)  As no witness is able to offer anything beyond speculation as to causation, key evidence was not preserved, Plaintiff offers no valid expert opinion, and Plaintiff and his own purported expert concede that Plaintiff misused the product in direct violation of its warnings, Plaintiff has no valid design defect claim in this case.

Ultimately, the undisputed facts in this case show that Plaintiff acted in reckless disregard of his own safety, and in glaring violation of the product warnings and common sense, by not only moving a commercial deep fryer while it contained hot cooking oil, but wheeling it around, pushing it over, and falling on top of it under workplace conditions that are unknown even to the Plaintiff.  If a manufacturer of a deep fryer were held liable for conduct this egregious, then it would be liable for anything a person does while using a cooking appliance. As Plaintiff's claims against Pitco are unsupported, and in fact defeated, by the evidence in this case, Pitco's Motion for Summary Judgment should be granted.

## **STATEMENT OF FACTS**

Plaintiff filed a Complaint alleging that he sustained a workplace injury on September 27, 2012, at the Chipotle restaurant in Williamsville, New York.  (Pitco's Statement of Undisputed Facts at ¶ ¶ 1.)  He claimed that he was working the closing shift, and at about 8:53 pm., he "moved the Pitco Fryer by wheeling it to a location in the restaurant where he

could power wash it" and "after plaintiff began to push the Pitco Fryer back to the location where it was normally kept, one of the Pitco Fryer's front wheels became locked, causing the Pitco Fryer to tip over, spilling scalding grease onto the floor."  (*Id.* at ¶ 2.)  Plaintiff claimed that he then "tripped over the Pitco Fryer and fell to the ground," where he came into contact with hot cooking oil and sustained injury. (*Id.* at ¶ 3)

Plaintiff asserted negligence and strict liability claims, alleging failure to warn, manufacturing defect, and design defect.  (*Id.* at¶ 4.)  He insisted that the fryer had an "inadequate wheel assembly" and "no safety measures on its front wheels to prevent them from locking," and that it lacked unspecified "prophylactic devices to prevent bodily contact with the scalding grease."  (*Id.*.)  Plaintiff also asserted breach of warranty claims (*Id.* at ¶ 5), and a final count styled as "failure to recall/retrofit" the fryer.  (*Id.*.)

Plaintiff testified at his deposition that he did not "power wash" or clean the fryer on the date of the incident.  (*Id.* at¶ 13.)  He also testified that he did not see any wheel lock, and that he does not know whether any wheel became locked or whether he struck something on the floor when he pushed the fryer over and fell on it.  (*Id.* at ¶¶ 14-15.)  He also admits there was a bright blue and yellow sticker on the front of the fryer that specifically warned:

> **CAUTION.  For your protection, do not move this unit unless hot liquids are completely drained.**

(*Id*. ¶ 18.)  Although Plaintiff worked the closing shift five or six nights per week, he claims to have never read this warning.  (*Id.* ¶¶2, 7, 18-20.)  He also concedes that he did not adhere to this warning and that he did, in fact, wheel the fryer 15 feet across the kitchen while it still contained hot cooking oil.  (*Id.* at ¶21.)

Plaintiff further testified that the operating manual for the fryer was located in the restaurant office adjacent to the kitchen, but he never asked to review the manual and never read the warnings contained therein.  (*Id.* at ¶¶28-30.)  The manual specifically warned:

> **DO NOT attempt to move this appliance when the unit is at operating temperature or filled with hot shortening oil, serious personal injury could result if skin comes into contact with hot surfaces or shortening oil.**
>
> **DO NOT attempt to move the appliance when it is in use or has hot liquid in it.  Splashing hot liquids can cause severe burns.**
>
> **At operating temperatures the shortening oil and appliance is very HOT, and can cause severe burns.  Do not let the hot shortening oil touch your skin or clothing.  Always wear insulated oil-proof gloves, protective clothing and eyewear when working on a hot appliance.**

(*Id.* ¶¶ 25-27.)   Plaintiff testified he required employees to read these same warnings after he became kitchen manager to make sure they were operating the fryer safely.  (*Id.* at ¶ 31.)

Plaintiff had observed other employees at Chipotle move the fryer, and consistent with the product warnings, they always drained the fryer of cooking oil before moving it. (*Id.* at ¶ 33.)  Plaintiff also testified he had worked in restaurants previously, that he had been burned before when working with hot cooking appliances, and that he understood the risk of burn injury from moving a deep fryer while it still contained hot oil. (*Id.* at ¶¶ 34-45.)

Plaintiff did not preserve the wheels of the fryer for inspection.  (*Id.* at ¶ 51.) Plaintiff did not preserve the surveillance video of the occurrence, and he has not identified any eyewitness to the occurrence.  (*Id.* at ¶¶ 53-55.)  Plaintiff's co-worker Sobeyda Casimiro was in the restaurant, but testified she did not see the incident. (*Id.* at ¶ 54.)  She also testified that Chipotle workers are trained to always check the fryer oil before attempting to clean behind the unit, that a working thermometer was available that would have allowed Plaintiff to

check the oil temperature, and that employees were never told, trained or allowed to move the fryer while it contained hot oil.  (*Id.* at ¶ 46,.)

Plaintiff identified a purported "expert," Fred Stolfi ("Stolfi"), who admits he is not a professional engineer or an expert in fryer design, and he has no experience in the design or manufacture of fryers. (*Id.* at ¶¶ 56, 57.)  Stolfi does not purport to be a warnings expert and offers no criticism of Pitco's warnings.  (*Id.* at ¶ 59.)  He does not identify any manner in which the manufacture of the fryer deviated from its design, and he admits he has never inspected the subject fryer or any other Pitco fryer.  (*Id.* at ¶¶ 60, 64.)  Stolfi also admits he performed no calculations or testing to support any opinion in this case, and he even denies he is offering expert opinions, stating that he has only identified "concepts" while conceding: "I don't know that much about the design of the fryer."  (*Id.* at ¶¶ 61, 64-66.)[1]

Stolfi also made clear he could not plug the causation hole in Plaintiff's case, as he stated he was not retained to determine the reason for the incident, he has not done any accident reconstruction, he does not know "what happened in particular," and he does not know how fast Plaintiff was traveling while pushing the fryer, or how sharp he turned, or if he turned, or if he hit an obstruction, or if he continued to push the fryer over after hitting an obstruction.  (Pitco SOF at ¶62.)  Furthermore, when asked to address what he did know, Stolfi did not support Plaintiff's claims. He instead testified that Plaintiff misused the fryer, that Plaintiff engaged in conduct that was contrary to the product warnings and instructions, that there is nothing unclear about the warning on the fryer, that oil should be drained from a

---

[1] As if to illustrate that he does not know much about the design of the fryer, Stolfi offered alternative design "concepts" involving a magnet lid and a magnet handle, and then admitted during his deposition: "I don't even know what parts of the fryer are magnetic.  (Pitco SOF at ¶ 65.)

fryer before anyone moves it, that the risk of sustaining a burn injury while moving a fryer containing hot oil is open and obvious, and that the incident would not have occurred had Plaintiff followed the product warnings.  (*Id.*  at ¶ 63.)

## ARGUMENT

### I.       Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, and other discovery establish that there is no genuine issue as to any material fact and Plaintiff's claims fail as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is properly regarded "as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327.  Summary judgment is appropriate if the plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  *Id.* at 323.  A moving defendant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324).

Once a properly supported summary judgment motion has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  Plaintiff must do more than show some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Plaintiff present evidence that is merely colorable, conclusory or speculative; he must present "concrete evidence from which

a reasonable [fact-finder] could return a verdict in his favor." *Anderson*, 477 U.S. at 256; *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture"). Applying these standards, summary judgment should be granted on each of Plaintiff's claims.

## II.    Plaintiff Cannot Establish Causation.

Plaintiff's claims fail, first and foremost, because he cannot establish causation. His claims were based on a theory that the incident occurred because the fryer wheels "became locked." (Compl. at 28; *see* Pitco SOF at ¶ 2.) He then failed to preserve the wheels, so they were not available for inspection. (Pitco SOF at ¶ 51.) This alone should defeat his claims. *See Thornhill v. A.B. Volvo*, 304 A.D.2d 651, 757 N.Y.S.2d 598 (2d Dep't 2003) ("[c]ontrary to plaintiff's contention, it was her responsibility to preserve the Volvo from spoliation, so that it could be made available to the defendants for inspection"); *Squitieri v. City of New York*, 248 A.D.2d 201, 202, 669 N.Y.S.2d 589 (1st Dep't 1998) ("a party's negligent loss of evidence can be just as fatal as the other party's ability to present a defense").

Furthermore, Plaintiff has no evidence as to why the incident happened. He only testified that he was moving the fryer while it contained hot cooking oil (in direct violation of the product warnings and instructions and defying his own duty of ordinary care in working around a hot cooking appliance), but he did not see any wheel lock. (Pitco SOF at ¶¶ 11, 14-15.) Plaintiff also testified that he does not know whether a wheel "became locked" or whether he hit an obstruction on the floor of the restaurant. (*Id.* at 15.) No other person claims to have witnessed the incident, and there are no photographs depicting the incident scene at the time of the occurrence. (*Id.* at ¶ 52-54.) Plaintiff testified that he viewed a

surveillance video of the incident, but Plaintiff did not preserve that evidence either.  (*Id.* at ¶ 55.)  Plaintiff's purported expert concedes that he did not inspect any part of the subject fryer, that he does not know what happened in particular," and that he was not retained to render an opinion as to how the incident occurred.  (*Id.* at ¶¶ 62.)

Causation is a necessary element of a personal injury claim.  *Viviano v. Keycorp.*, 128 A.D.3d 811, 9 N.Y.S.3d 154 (2d Dep't 2015).  Here, Plaintiff has no evidence to show what caused the incident.  No witness or expert has furnished evidence of causation, and the surveillance video and wheels on the unit were lost or destroyed.  Where, as here, a claimant sustained an injury but cannot establish how the incident occurred, summary judgment in favor of the defendant should be granted.  *See, e.g., Luciano v. Trans World Airlines, Inc.*, No. 96-cv-3999, 1998 WL 433808 (E.D.N.Y. July 28, 1998) (summary judgment granted as plaintiff admitted she did not know what caused the incident); *Viviano.*, 128 A.D. 3d at 811-12 ("[a] plaintiff's inability to identify the cause of her fall is fatal to a cause of action to recover damages for personal injuries because a finding that the defendant's negligence, if any, proximately caused plaintiff's injuries would be based on speculation").

## III.   Plaintiff's Duty To Warn Claim Fails As A Matter of Law

Under New York law, a failure-to-warn inquiry focuses on three factors: (1) obviousness of risk from actual use of product, (2) knowledge of the particular user, (3) and proximate cause.  *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (no valid duty to warn claim exists where danger is open and obvious ); *Merced v. Auto Pak Co.*, 533 F.2d 71, 76 (2d Cir. 1976) ("Under either theory of [negligence or strict] liability, a plaintiff cannot recover in New York for injuries resulting from his willful exposure to a known or 'patent' danger in the use of a product.").

9

In *Warlikowski v. Burger King Corp.*, 9 A.D.3d 360, 780 N.Y.S.2d 608 (2d Dep't 2004), a fast food employee slipped and fell while transporting hot cooking oil from a fryer. Plaintiff argued the fryer should have been sold with an optional, wheeled disposal unit to transport hot oil.  The court ruled that summary judgment should have been granted, holding:

> Frymaster demonstrated its prima facie entitlement to summary judgment dismissing the plaintiff's failure to warn causes of action.  *The service manual for the fryer contained warnings, inter alia, advising users to allow shortening to cool below 100 Fahrenheit before transporting it for disposal, and that a covered container should be used.  In addition, the warning label located on the inside front door of the fryer advised users that procedures for the disposal of shortening provided in the service manual should be followed.*  The plaintiff ignored both of these warnings.  Furthermore, the plaintiff was an experienced fry-cook, who had sustained burns from spattering shortening in the past, and was aware that the shortening was hot; the dangers to which the plaintiff was exposed were readily apparent.  Moreover, Frymaster had no duty to warn the plaintiff of the readily discernible dangers of which he was already aware

*Warlikwoski*, 9 A.D.3d at 361-62.  The court also rejected the design defect claim, holding that the fryer was reasonably safe for the purpose for which it was designed and fit for the ordinary purpose for which it was used.  *Id.* at 361.  *Accord Rock v. Oster Corp.*, 810 F. Supp. 665, 667 (D. Md. 1991) ("no 'expert' opinion can negate what common sense dictates: that care needs to be taken to prevent a pot containing hot oil from being knocked over.")

Here, Plaintiff's warnings claims similarly fail.  Pitco provided express warnings beginning with the blue and yellow sticker on the front of the fryer that warned:

"**CAUTION.  For your protection, do not move this unit unless hot liquids are completely drained**."   (Pitco SOF at ¶¶ 18-19, 23.)  As in *Warlikowski,* Pitco also furnished a warning on the inside door of the fryer (the same door that Plaintiff claims he pulled on to move the fryer on the date of the incident), which states:

**APPLIANCE SHOULD NOT BE MOVED WITHOUT FIRST DRAINING ALL LIQUIDS FROM TANK, OTHERWISE INJURY COULD RESULT.**

(Pitco SOF at ¶24.)   Pitco included additional warnings in the product manual, which stated:

> **DO NOT attempt to move this appliance when the unit is at operating temperature or filled with hot shortening oil, serious personal injury could result if skin comes into contact with hot surfaces or shortening oil.**
>
> **DO NOT attempt to move the appliance when it is in use or has hot liquid in it.  Splashing hot liquids can cause severe burns.**
>
> **At operating temperatures the shortening oil and appliance is very HOT, and can cause severe burns.  Do not let the hot shortening oil touch your skin or clothing.  Always wear insulated oil-proof gloves, protective clothing and eyewear when working on a hot appliance.**

(*Id.* ¶¶ -25-27.)

Plaintiff's claims fail because he admittedly ignored and violated these warnings. *Warlikowski*, 9 A.D.3d at 362.  And having admittedly failed to read five different warnings, Plaintiff cannot validly claim failure to warn or that he would have read or adhered to any additional warnings from Pitco.  *See Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 540 (S.D.N.Y. 1999) (summary judgment granted; plaintiff admittedly did not read the product warnings, and thus, could not establish causation on his failure to warn claim); *Toole v. Toshin Co, Ltd.*, 00-CV-821S, 2004 WL 2202580 (W.D.N.Y. Sept. 29, 2004), at *8 (summary judgment on failure to warn claim granted, as "plaintiff has failed to make the necessary showing that more adequate warnings would have averted her accident").

Moreover, in New York the law is well settled that manufacturers do not have a duty to warn of dangers that are open and obvious, meaning, dangers "that could or should have been recognized as a matter of common sense."  *Frisbee v. Cathedral Corp.*, 283 A.D.2d 806, 807, 725 N.Y.S.2d 806 (3d Dep't 2001); *Lamb v. Kysor Indus. Corp.*, 305 A.D.2d 1083, 1084, 759 N.Y.S.2d 266 (4th Dep't 2004) (citing *Liriano v. Hobart Corp.*, 92 N.Y.2d 232,

241-42, 677 N.Y.S.2d 764 (1998).  New York courts routinely dismiss lawsuits where plaintiffs' injuries result from open and obvious dangers.  *See, e.g., Belling v. Haugh's Pools, Ltd.*, 126 A.D.2d 958, 511 N.Y.S.2d 732 (4th Dep't 1987) (diving into a shallow swimming pool involved "open and obvious" danger); *Bazerman v. Gardall Safe Corp.*, 203 A.D.2d 56, 609 N.Y.S.2d 610 (1st Dep't 1994) (danger from turning heavy safe over was obvious and did not require a warning).  *See also Bellinger v. Deere & Co.*, 881 F. Supp. 813, 815 (N.D.N.Y. 1995) ("where an injured party knows of the danger presented by the product, no liability results from failure to warn.")

Indeed, in cases involving deep fryers, courts have consistently granted summary judgment in favor of the manufacturers on the basis that a fryer is designed to cook food using hot oil, and its dangers are open and obvious.  *See Warlikowski*, 9 A.D.3d at 362 ("Frymaster had no duty to warn the plaintiff of readily discernible dangers [of a deep fryer] of which he was already aware"); *Schiller v. Nat'l Presto Indus., Inc.,* 225 A.D.2d 1053, 639 N.Y.S.2d 217 (4th Dep't 1996) (dangers associated with allowing the cord of a deep fryer containing hot oil to dangle over the edge of a kitchen counter was readily apparent); *Cochran v. Brinkmann Corp.*, 2009 WL 4823854 (N.D. Ga. Dec. 9, 2009), *aff'd*, 381 Fed. Appx. 968 (11th Cir. 2010)  "[t]he dangers associated with the turkey fryer are inherent, objectively open and obvious, and no reasonable jury could conclude otherwise, nor would they require a warning of the obvious danger at issue in this case"); *Orkin Exterminating Co. v. Dawn Food Products*, 366 S.E.2d 792, 795 (Ga. App. 1988) ("the danger of dislodging the fryer so that its contents could spill out were obvious and patent").

Summary judgment is similarly warranted in the present case.  The dangers of moving a deep fryer containing hot cooking oil were open and obvious.  Plaintiff admits that he had

previously worked in restaurant kitchens, that he had been burned before, that he had seen

others sustain burns working with hot appliances, and that he understood the risk of burn

injury from moving a fryer while it contained hot oil. (Pitco SOF at ¶¶ 32-45.)  Plaintiffs'

"expert" similarly testified that the risk of burn injury while moving a fryer containing hot oil

is open and obvious.  (*Id.* at ¶ 63.)  Coupled with the fact that Plaintiff proffered no expert

opinion that Pitco's warnings were insufficient (and his purported expert testified there is

nothing unclear about the warning on the Pitco fryer and that the incident would not have

occurred had Plaintiff followed the product's warnings), Count V of Plaintiff's Complaint

fails as a matter of law, and summary judgment in favor of Pitco should be granted.

## IV.    Plaintiff Has No Evidence Of Any Manufacturing Defect.

A manufacturing defect "results when a mistake in manufacturing renders a product

that is ordinarily safe dangerous so that it causes harm, and is premised on the relevant

product being defective because it was not manufactured as designed."  *Miccio v. Conagra

Foods, Inc*., 224 F. Supp. 3d 200, 204 (W.D.N.Y. 2016).  Plaintiff is required to show that

the fryer "deviate[d] in quality and other performance standards from all of the other

identical units."  *Toole*, 2004 WL 2202580, at *8 (citing *Colon*, 199 F. Supp. 2d at 85; *G.E.

Capital Corp. v. A.O. Smith Corp.*, 01 Civ.1849, 2003 WL 21498901, at *6 (S.D.N.Y. July 1,

2003).  The existence of a manufacturing defect "is an objective determination frequently

established by real evidence."  *Id.* (quoting *Rainbow v. Albert Elia Bldg. Co., Inc*., 79 A.D.2d

287, 294, 436 N.Y.S.2d 480 (4th Dep't 1981)).

Here, there no evidence of a manufacturing defect.  Plaintiff's Complaint suggested

an intention to premise this case on a manufacturing defect, as he claimed the front wheels

on the fryer "became locked."  He then failed to preserve the wheels, and his testimony did

not support this supposition.  Plaintiff's own purported expert also conceded that he never tested or inspected the wheels (because "no one knows where they are") and he never inspected any part of the Pitco fryer.   (Pitco SOF at ¶ 60.)  Plaintiff's "expert" further concedes he is not rendering any opinion as to whether the wheels functioned properly (*Id.*), and Plaintiff has identified no manner in which the fryer deviated from its intended design, or that it was different from any other Pitco fryer of the same model.  Accordingly, summary judgment should be granted on this claim.  *See, e.g, Pinello v. Andreas Stihl AG & Co.*, No. 8:08:-CV-0452, 2011 WL 1302223 (N.D.N.Y. March 31, 2011) (plaintiff must present expert testimony to carry it burden in a product liability action, and without such testimony, "plaintiff's liability theories are no longer viable and summary judgment is appropriate.")

## V.      Plaintiff's Design Defect Claims Likewise Fail.

Plaintiff's design defect claims fails for at least five separate and independent reasons. First, as with his other claims, Plaintiff has no evidence to establish the essential element of causation. He concedes he does not know why the incident occurred, he failed to preserve the surveillance video to establish why the incident occurred, and his own purported expert stated that he performed no testing or accident reconstruction and was not tasked with determining why the incident occurred.  Where, as here, Plaintiff has no evidence as to why the incident at issue occurred, the claim fails as a matter of law based on lack of causation.

Second, what the evidence does show in this case is that the incident would not have occurred but for Plaintiff's glaring misuse of the product in not only moving a fryer while it contained hot oil, but wheeling it around with such momentum that he pushed it over and fell on it.  (Pitco SOF at ¶¶ 11, 14.)  Plaintiff's own purported expert testified that Plaintiff misused the fryer, that it should not have been moved while it contained hot oil, and that the

incident would not have occurred had Plaintiff followed the product warnings.  (*Id.* at¶ 63.)
Relevant precedent holds that summary judgment is warranted under these circumstances.
*See Warlikowski*, 9 A.D.3d at 362 (rejecting design defect claims as the fryer was reasonably
safe for the purpose for which it was designed and the fryer was fit for the ordinary purpose
for which it was used); *Orkin*, 366 S.E.2d at 795 (rejecting design defect claim as "the
danger of dislodging the fryer so that its contents could spill out were obvious and patent").

Third, a product is not unreasonably dangerous if its risks are easily anticipated and
can be avoided with ordinary care.  In *Gonzalez v. Morflo Indus., Inc.*, 931 F. Supp. 159
(E.D.N.Y. 1996), the court granted a summary judgment to a water heater manufacturer in a
case where a child was injured from scalding hot water in a bathtub.  The court found that the
child's injuries "were both tragic and heart-wrenching," but "it is equally indisputable that
they could readily have been anticipated and eliminated entirely with ordinary care."  *Id.* at
166-67.  The court found that no rational jury could conclude that the water heater was
unreasonably dangerous because the plaintiff provided "no evidence that the general public is
unaware of the dangers of hot water or that they are unable to avoid them."  *Id*. at 166.

Here, Plaintiff admits it was ingrained in him through safety training that commercial-
grade kitchen equipment is hot and you must be careful working around such equipment.
(Pitco SOF at ¶¶ 34-42.)  The risk of burn injury from hot cooking oil was understood by
Plaintiff, as was the ability to avoid this danger through the use of ordinary care as he
testified he had seen other employees at Chipotle move the fryer, and consistent with the
product warnings, these employees always drained the oil from the fryer before moving it.
(*Id.* at ¶¶32-33, 43.)  Plaintiff's own "expert" similarly testified that a fryer containing hot oil
presents an open and obvious risk of burn injury that Plaintiff could have avoided had he

followed the product warnings.  (*Id.* at ¶ 63.)  Thus, pursuant to the principles set forth in *Gonzalez* and similar cases, Plaintiff's design defect claims fail as a matter of law.  *See also Rock*, 810 F. Supp. at 667 (rejecting design defect claim on basis that a fondue pot containing hot oil presents an obvious and common danger that can be avoided with ordinary care).

Fourth, Plaintiff's design defect fails based on Plaintiff's failure to preserve relevant evidence.  Here, Pitco was deprived of the opportunity to inspect the wheels of the subject fryer and the surveillance video depicting the incident.  As the court held in *Squitieri v. City of New York*, 248 A.D.2d 201, 203-04,  669 N.Y.S.2d 589 (1st Dep't 1998), even assuming arguendo that a particular model unit in a product case had some type of defect, defendant's inability to inspect lost evidence "would prevent [defendant] from countering the design defect claim with evidence that the… misuse, alteration, or poor maintenance of this particular [unit] was a proximate cause" of plaintiff's injuries.  The *Squitieri* court further held that the inability to counter the defense defect claim in this regard amounts to "extreme prejudice" warranting dismissal.  *Squitieri*, 248 A.D.2d at 204.

Fifth, Plaintiff has offered no valid expert opinions in this case.  The burden rests on the party offering expert testimony to establish by a preponderance of the evidence that the admissibility requirements are met."  *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579,    593, n. 10 (1993).  It must be shown that the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 592-93.  The party must show that its proffered expert is both qualified and has employed a valid underlying methodology."  *In re M/V MSC FLAMINIA*, No. 12-CV-8892 (KBF), 2017 WL 3208598, at *3 (S.D.N.Y. July 28, 2017).  Likewise, the court "will not admit opinions premised on speculation or that amount to ipse dixit, *i.e.*, assertions that something is true because the expert says so."  *Id.*

Moreover, an expert opinion is not valid if there is a "mismatch" between an expert's area of superior knowledge or experience, and the subject matter of the proffered testimony. *Id.* Courts have consistently refused to allow proffered experts to testify where they lacked qualifications in the specific areas for which they are being presented. *See, e.g., Fernandez v. Cent. Mine Equip. Co.*, 670 F. Supp. 2d 178, 184 (E.D.N.Y. 2009) ("Although Anderson is a licensed mechanical engineer, his work experience contains little to no involvement in the drilling industry. Nothing in his resume or his deposition testimony permits this Court to conclude that Anderson has any relevant experience in the field of geotechnical or water well drilling or with a manually operated cathead, such as the one at issue in this litigation."); *Solorio v. Asplundh Tree Expert Co.*, No. 02 Civ. 8035, 2009 WL 755362, at *2 (S.D.N.Y. Mar. 23, 2009) (barring expert who had "a degree in 'mechanical engineering *technology*' not 'mechanical engineering,' noting he was not a professional engineer and had not written any "peer-reviewed articles, participated in the drafting of any standards or regulations, designed a product that went to market, or received any patents" (emphasis in original)).

Applying these principles, Plaintiff has not proffered any valid expert opinions in this case. Stolfi is not a professional engineer in New York or any other state.2 (Pitco SOF at ¶ 56.) He has never designed a fryer. (*Id.* at ¶¶ 56-57, 64-65.) He has never operated a fryer. (*Id.* at ¶ 57.) He has no patents relating to fryers. (*Id.*.) He worked in research, not product development, for the companies that employed him before the last two decades that he has

---

2   In New York, "[o]nly a person licensed or otherwise authorized under this article shall practice engineering[.]"  N.Y. Educ. Law § 7202.  The practice of the profession of engineering is defined as "performing professional service such as consultation, investigation, evaluation … in connection with any … machines, equipment, processes, works, or projects wherein the safeguarding of life, health and property is concerned, when such service or work requires the application of engineering principles and data."  N.Y. Educ. Law § 7201.

spent in academia, and his work related to ink jet printers and toners, hairdryers, and a "cryogenic refrigerator." (*Id.* at ¶ 58.)  His work had nothing to do with fryers. (*Id.* at ¶¶ 56-58.)  Most significantly, Stolfi himself testified that he is not an expert in fryer design. (*Id.* at ¶¶ 57, 64-65.)   And when pressed regarding the "concepts" that he references in his report, Stolfi testified: "I don't know much about the design of the fryer." (*Id.* at ¶64.)

Stolfi, thus, is not only an odd choice for the Plaintiff to engage to offer opinions regarding the design of a deep fryer.   By his own admission, Stolfi is not an expert in fryer design, and he is not qualified to offer expert opinions in this case. *See Barban v. Rheem Textile Sys., Inc*., No. 01 Civ. 8475, 2005 WL 387660, at *3–4 (E.D.N.Y. Feb. 11, 2005) (barring expert as unqualified because he "has never designed a machine of any kind, and has never worked with laundry machines in any capacity that bears on the conclusions he reaches in this case"), *aff'd*, 147 Fed. Appx. 222 (2d Cir. 2005)).

Furthermore, Plaintiff cannot meet his burden of establishing that Stolfi followed any valid methodology. (Pitco SOF at ¶ 66.)  Stolfi did no testing. (*Id.* at ¶¶61, 66.)  He performed no calculations. (*Id.* at ¶ 61, 66.)  He created no engineering drawings. (*Id.* at ¶ 61.)  He does not even have a rough sketch. (*Id.*.)  He has no work product. (*Id.* at ¶¶ 61, 66.)  He performed no risk analysis. (*Id.* at ¶ 61.)  He performed no cost analysis. (*Id.* at ¶ 61.)  He did not create any bill of material. (*Id.*.)  He did not attempt to source any materials, create any prototype, or come up with any detailed design. (*Id.*.)  He never inspected the fryer. (*Id.* at ¶ 60.) He never inspected any Pitco fryer. (*Id.*.)  He never visited the incident scene. (*Id.*)  He performed no accident reconstruction. (*Id.* at ¶ 62.)

When asked to defend his opinions, he testified he is not rendering opinions. (*Id.* at ¶¶ 60, 64.)  He stated he is only describing "concepts," and that he has not worked out the

"details."  (*Id.* at ¶¶ 65-66.)  He concedes his "concepts" were not subject to any peer review,

and he could not identify any fryer manufacturer that has adopted any of his concepts.  (*Id.* at

¶ 66.)  He could not attest as to whether his "concepts" would actually work, as they are

entirely untested, and after offering concepts that included a magnet lid and a magnet handle,

he admitted: "I don't even know what parts of the fryer are magnetic." (*Id.* at 65.)  When

asked what methodology he followed, he responded he does not understand the word

"methodology."  (*Id.*.)  He then testified how he arrived at his "concepts" as follows:

> Q.     Can you identify any calculations that you made?
>
> A.     No.
>
> Q.     Can you identify any test that you did?
>
> A.     No.
>
> Q.     Can you identify any methodology that you followed on a step-by-step basis?
>
> A.     Well, I teach design, so used the design method that I teach.
>
> Q.     What's in your head?
>
> A.     Yes.
>
> Q.     There's no work product associated with the words on this paper, correct? There's nothing written down that you can show me that says, this is why I'm arriving at this conclusion?
>
> A.     Correct.
>
> Q.     There's nothing that you did in terms of writing things down that allowed you to arrive at the conclusions, correct?
>
> A.     Correct.

(*Id.*)  And, when asked whether there was anything outside of his general engineering

knowledge and writing the words on the pages of his report that he did to support his

concepts, Stolfi responded: "No."  (*Id.*.)

Stolfi's testimony presents a textbook example of what is not permitted under Rule 702 and the *Daubert* standard.  *Compare Pinello*, No. 8:08-CV-00452 at * 9 (barring plaintiff's proposed expert as his analysis had not been tested and had not submitted for peer review); *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 432 (E.D.N.Y. 2013) (excluding expert who failed to conduct any testing and "did not examine the golf car at issue or an exemplar golf car"); *Bourassa v. Black & Decker (U.S.) Inc., et al*, 2015 WL 4715250, at *5 (N.D.N.Y. Aug. 7, 2015) ("[T]he methodology through which Dr. Wright formed his opinions lacks reliability. He did not even consider many of the relevant facts. Dr. Wright was not aware, for instance, of the mechanism of injury to Plaintiff—that is, he was not aware of what object or force acted upon Plaintiff's hand to cause the injury.")

Thus, Stolfi should be barred, and for this all of the reasons set forth above, Pitco's Motion for Summary Judgment should be granted.  *Pinello*,  No. 8:08-CV-00452 at * 9 ("where a plaintiff's expert's opinion and testimony in a product liability action is precluded, plaintiff's liability theories are no longer viable and summary judgment is appropriate"). *Accord Brooks v. Outboard Marine Corp.*, 234 F. 3d 89, 92 (2d Cir. 2000) (summary judgment granted where plaintiff's expert was excluded and thus plaintiff had no evidence to support design defect claim); *Quintanilla v. Komori Am. Corp.*, 2007 WL 1309539 ("Having ruled that plaintiff's proposed expert testimony is inadmissible, plaintiff 'has no evidence to support his claim(s) that amounts to [any]thing more than he was injured' while using a printing press manufactured by defendant"), *aff'd* 2009 WL 320186 (2d Cir. 2009).

**VI.     Plaintiff Can Establish No Valid Claim For Breach Of Warranty**

      **A.     Plaintiff's Warranty Claims Are Time Barred**

Plaintiff's claims for breach of warranties are barred by the applicable statute of limitations.  Under New York Uniform Commercial Code, Section 2-725, claims for breach of express and implied warranties are subject to a four-year statute of limitations triggered on the date the manufacturer delivers the product to the end user or otherwise places the product into the stream of commerce.  *See Toole*, 2004 WL 2202580, at *9; *Heller v. U.S. Suzuki Motor Corp*., 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132 (1985).  New York courts routinely dismiss express and implied breach of warranty claims in personal injury cases based on this limitations period.  *See, e.g., Tinnell v. Invacare Corp*., 819 F. Supp. 2d 192, 195 (W.D.N.Y. 2011) (dismissal of breach of express warranty claim where lawsuit was commenced more than four years after delivery of hospital bed at issue).

The four-year time period begins to run on the day the product departs the manufacturer's possession and regardless of when the personal injury is sustained.  *Hanlon v. Gliatech, Inc*., CV-07-1737 SJF AKT, 2008 WL 4773430, at *4 (E.D.N.Y. Oct. 27, 2008) (citing *Schrader v. Sunnyside Corp*., 297 A.D.2d 369, 371, 747 N.Y.S.2d 26 (2d Dept. 2002)) (the statute of limitations for a breach of warranty claim, "whether implied or express, begins to run at the time the product is placed in the stream of commerce …, regardless of when the injury was sustained"); *Toole*, 2004 WL 2202580, at *9 ("In New York, the law is clear that such a claim accrues at the time the product is delivered.")  Moreover, courts determining the accrual date "apply the date of tender rule quite rigidly."  *Id.* (citing *Orlando v. Novurania of Am., Inc*., 162 F. Supp. 2d 220, 223–24 (S.D.N.Y. 2001)).

The same statute of limitations applies where the product is delivered to the injured plaintiff's employer rather than to the plaintiff. *Saladino v. Stewart & Stevenson Srvcs., Inc.,* 01-CV-7644, 2007 WL 4285377 (E.D.N.Y. Dec. 3, 2007) (breach of warranty claims accrue when the manufacturer tenders delivery of the product to the initial purchaser and the time bar applies "even when the product was delivered to the injured party's employer instead of to him or her directly"). *Accord Vanata v. Delta Intern. Machine Corp.*, 269 A.D.2d 175, 702 N.Y.S.2d 293 (App. Div. 1st Dep't 2000) (because the tractor was delivered to the American Airlines in May 1990, the statute of limitations expired in May 1994. As such, the plaintiff's December 2001 complaint was filed "well after the applicable statute of limitations period had expired." *Id.* at *12.

Here, Chipotle ordered the fryer from Pitco's distributor, Concept Services, in August 2010, and Concept Services tendered delivery of the fryer to Chipotle in December 2010. (Pitco SOF at ¶17.) Plaintiff filed this action on August 17, 2015, more than four years later. Therefore, Plaintiff's claims for breaches of express and implied warranties are barred by the applicable statute of limitations.

**B.    Plaintiff Failed To Identify Any Express Warranty He Relied Upon In This Case.**

New York law further requires that a plaintiff asserting a breach of express warranty claim "must set forth the terms of the warranty upon which he relied" and failure to do so should result in dismissal of this claim. *Pinello*, No. 8:08-CV-00452 at * 17 ("Plaintiff does not identify the terms of the purported warranty he claims to have relied on. Plaintiff's conclusory allegation that [defendant] 'breached any and all express warranties made or relating to the machine," without any documentary evidence of a particular affirmation or promise made by Defendant is insufficient to create a material issue of fact"); *Davis v. New*

*York City Housing Authority*, 246 A.D.2d 575, 668 N.Y.S.2d 391 (2d Dep't 1998)

(dismissing express warranty claim for failure to set forth terms of warranty on which

plaintiff allegedly relied).

Like the plaintiffs in the foregoing cases, Plaintiff Hernandez included an express

warranty claim in his pleading which utilized conclusory language (that Pitco "expressly

warranted" that the fryer and all of its components were reasonably safe, merchantable and

fit for their intended purpose) without referencing any document of any particular affirmation

or promise on which Plaintiff relied.  (Compl. at ¶¶ 45-51.)  Plaintiff also conceded that he

never reviewed or asked to review the product manual much less any express warranty, and

thus, he plainly did not rely on any express promise or affirmation from Pitco.  Plaintiff has

no valid claim for express warranty under these circumstances.  *See Pinello*,  No. 8:08-CV-

00452 at * 17; *Fuller v. Summit Treestands*, LLC, No. 07-CV-00330(A)(M), 2009 WL

1874058, at *3 (W.D.N.Y. May 11, 2009), *adopted*, 07-CV-330A, 2009 WL 1874057

(W.D.N.Y. June 30, 2009) (a claim for breach of express warranty requires the "existence of

an express promise or representation and reliance on that promise or representation")

(quoting *Horowitz v. Stryker Corp.*, 2009 WL 436406, *11 (E.D.N.Y. 2009)).

**C.      Plaintiff Has No Evidence Of Breach Or Causation.**

Under New York law, personal injury claims rooted in warranty require evidence of

breach and causation.  *Nealy v. United States Surgical Corp.*, 587 F. Supp. 2d 579, 584

(S.D.N.Y. 2008).  Plaintiff's claiming breach of implied warranty must also raise evidence

that the product "is not 'fit for the ordinary purposes for which such goods are used' when

the product leaves the hands of the manufacturer."  *Macaluso v. Herman Miller, Inc*., 01

CIV. 11496, 2005 WL 563169, at *5 (S.D.N.Y. Mar. 10, 2005) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250 (1995)).

Here, Plaintiff cannot establish any of these requirements to sustain any claim.  As a threshold matter, the unit was in daily use for over two years prior to the incident, and Plaintiff has identified no evidence to sustain his burden of establishing the unit was in the same condition as when it left the control of the manufacturer.  Moreover, Plaintiff failed to preserve the wheels that were reportedly on the unit at the time of the incident, prejudicing Pitco's ability to counter Plaintiff's claims.  Plaintiff, furthermore, cannot establish the elements of breach or causation as he has not offered competent evidence that the fryer was not fit for the ordinary purpose for which it was sold, nor has Plaintiff identified evidence to establish any causal connection between any supposed breach and the incident.

Combined with the series of cases which hold that a deep fryer containing hot cooking oil is "reasonably safe for the purpose for which it was designed" and "fit for the ordinary purpose for which it was used," Plaintiff has no valid breach of warranty claim in this case. *See Warlikowski*, 9 A.D.3d at 610.  *Accord Orkin*, 366 S.E. 792 ("[w]e agree with the trial court that the record is devoid of evidence indicating that the doughnut fryer was not reasonable suited to the purpose for which it was designed, i.e. frying doughnuts."

## VII.   Plaintiff's Failure to Recall or Retrofit Claim Fails Because No Such Cause of Action Exists Under New York Law

In his final cause of action, Plaintiff alleges Pitco had a duty to recall or retrofit the fryer.  (Compl. at ¶ 63.)  Pitco is entitled to summary judgment on this claim "because no such cause of action exists under New York Law." *Licorish v. L'Oreal USA, Inc.*, 36 Misc.3d 133(A) (App. T. 1st Dep't 2012); *Adams v. Genie Indus., Inc.*, 14 N.Y.3d 535, 544, 903 N.Y.S.2d 318 (2010) ("We have never imposed a post-sale duty to recall or retrofit a

product"). In *Quiles v. Bradford-White Corp.*, 10-CV-747, 2012 WL 1355262 (N.D.N.Y. Apr. 18, 2012), the court dismissed the plaintiff's claim that the manufacturer of the hot water heater which allegedly caused an explosion was under a duty to recall or retrofit the heater with an alternative design. *Id.* at *8. The court held the manufacturer "had no duty under New York law to perform a post-sale retrofit or recall of the hot water heater" and held that "any claim that [the manufacturer] was negligent for failing to retro fit the water heater with an alternative design, or recall the water heater, is dismissed." *Id.*

Thus, beyond Plaintiff's failure to offer competent evidence establishing any product defect, Plaintiff's final claim fails because no duty to recall or retrofit exists under New York law. Pitco's Motion for Summary Judgment, thus, should be granted on this claim as well.

## CONCLUSION

Plaintiff has no competent evidence from which a reasonable jury could find in his favor on his claims against Pitco. Therefore, Pitco should be granted summary judgment on all of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Court should dismiss the Complaint in its entirety. Pitco further request that this Court grant Pitco its costs and such other and further relief as the Court may deem just and proper.

Dated:  June 29, 2018                    Respectfully submitted,

                                         *PITCO FRIALATOR, INC.*


                                         /s/ P. Shawn Wood_____
Susan E. Van Gelder                      P. Shawn Wood, admitted *pro hac vice*
GOLDBERG SEGALLA LLP                     **SEYFARTH SHAW LLP**
665 Main Street, Suite 400               233 S. Wacker Drive, Suite 8000
Buffalo, NY  14203                       Chicago, IL  60606
(716) 566-5400                            (312) 460-5000
svangelder@goldbergsegalla.com           swood@seyfarth.com