UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JORDAN M. HERNANDEZ,

                Plaintiff,

                                    Civ No.: 1:15-CV-01079

      v.

PITCO FRIALATOR, INC.,

                Defendant.
_____

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION

### STATEMENT OF THE CASE

On September 27, 2012, Plaintiff Jordan Hernandez, who had just turned age 20, was severely burned while working at a Chipotle restaurant in Williamsville, New York.  A fryer manufactured by defendant Pitco Frialator, Inc. ("Pitco") tipped over, spilled oil on the floor, and burned Mr. Hernandez.  Plaintiff's expert witness Fred Stolfi, Ph.D., who has taught engineering and product design at Columbia University since 2001, submitted an expert report showing feasible alternative designs that would have prevented the fryer from tipping or at least mitigated the safety hazards to a user of the fryer, when equipped with an optional wheel assembly.

Pitco's witness, Anthony Reale, admitted when casters are sold with a Pitco Model 35C Freyer,  Pitco's engineering department might expect that the customer might move the Fryer (Appendix Item 3, Gerald Walsh Affidavit, sworn August 29, 2018, Exh. 1, p. 87, lines 6-11). It was reasonably foreseeable that young fast food workers at Chipotle would clean around and behind Pitco fryers because Pitco's fryers are installed regularly in Chipotle's restaurants, including the location where Mr. Hernandez worked.  Defendant contends summary judgment

should be granted because Mr. Hernandez negligently moved the fryer.  Summary judgment must be denied because resolution of the issue of comparative negligence is a question for the jury.

Pitco does not challenge the fact that its fryer tipped over, filled with hot cooking oil.  Pitco does not discuss any of the available alternative designs that would render the fryer stable and resistant to tipping over.  Pitco's motion should be denied and the case should proceed to trial for a jury to determine the extent to which Pitco is liable for causing Mr. Hernandez's injuries.

## STATEMENT OF PERTINENT FACTS

On September 27, 2012, at the end of the evening at the Chipotle, Transit Road, Williamsville restaurant,  Jordan Hernandez "was cleaning behind the grill so I had already moved the fryer to, you know, the place that Jacob [Vasquez] told me to move it to.  I cleaned, you know. I deck brushed behind it.  I – I cleaned the walls behind it, and then it was time for me to move the fryer back I started pushing it and the – way I understand is that one of the wheels locked up and I started to fall forward, and my momentum was going with it, so I tripped over it as it was falling and I ended up on the other side of it.  The top fell off and the oil spilled all over me. See Plaintiff's Appendix to Rule 56(a) Statement, Item 4, Hernandez Dep., p. 80, line 16 -p.81, line 22.

When the injury occurred, Jacob Vasquez, Chipotle's manager, and Sobeyda Casamiro were in an adjacent room, washing pots and dishes (Pitco motion, Exhibit G, Casimiro deposition). Ms. Casamiro did not see the fall, but did see the aftermath of the fall, with Mr. Hernandez screaming in agony, in the burning hot oil. Photos of Jordan's burns are at Appendix Item 1, Exhibit A.

Anthony Reale, Pitco's Laboratory Manager, was Pitco's standards engineer, for 18 years (Appendix, Item 3, Walsh Affidavit, Exhibit 1, Reale Deposition "Reale Dep." p. 5, lines 11-18).

2

Pitco has sold the Model 35C Fryer for roughly 27 years (Reale Dep. p. 13, lines 11-15). Four casters were included with the Model 35C Fryer sold to the Chipotle restaurant where plaintiff worked (Reale Dep. p. 19, lines 7-8 ; p. 21, lines 17-20). Two non-locking casters were for the rear of the appliance and two locking casters would be on the front of the appliance (Reale Dep. p. 22, lines 1-7). Chipotle cooks tortilla chips in the Model 35C Fryer (Reale Dep. p. 56, lines 13-14). Hot oil can cause burning (Reale Dep. p. 50, lines 9-10).

The intended use of the casters "would just facilitate cleaning of the kitchen. If they would have wheels on it, it would make it easier to clean" (Reale Dep. p. 26, line 18 - p. 27, line 3).

At Page 10 of Pitco's Model 35C Manual (Reale Dep. p. 78, line 17-p.79, line 18), no warnings or instructions are included for moving the 2005 Model 35C for daily cleaning(Reale Dep. p. 79, line 20-p.80, line 9). At pages 11 and 12 of Pitco's 2005 Model 35C Manual regarding weekly cleaning instructions, no instructions or warnings are provided about moving the appliance (Reale Dep. p. 80, lines10-18).

There is no optional handle that can be attached to Pitco's Model 35C Fryer (Reale Dep. p. 27, lines 14-16). Pitco sells nothing that would allow a customer to add any weight to the lower half of the Model 35 C, if wheels were ordered with the device (Reale Dep. p. 27, line 24 -p.28, lines 1-4). During Mr. Reale's 28 years at Pitco, no stability testing has been done at Pitco for the Model 35C Fryer (Reale Dep. p. 28, line 8-p. 30, line 22).   The Model 35C Fryer Pitco at issue in this case has a stainless steel tank, with a cabinet made of mild steel (Reale Dep. p. 31, lines 3-18), and a stainless steel hood with handle, but no latch (Reale Dep. p. 32, lines 12-19). Pitco has not used or considered a magnetic latch device for the cover of the Model 35C Fryer (Reale Dep. p. 33, lines 8-13).

3

Though Pitco's installation and operation manual calls for a stabilizing device for a Model 35C Fryer used in freestanding mode, no Pitco stabilizing device is sold or provided by Pitco for a freestanding Model 35C Fryer, to prevent it from tipping (Reale Dep. p. 34, lines 9-19; p. 35, lines 9-13; p. 84, lines 11-15). Pitco does not tell customers where to get the stabilizing equipment (Reale Dep. p. 36, line 4-12). When Mr. Reale saw the Pitco Model 35 C at the Chipotle location at issue in this case, it was alcoved, between two other appliances, but instead of casters, there were Pitco flanged feet or seismic feet on the Fryer, bolted to the ground (Reale Dep. p. 36, line 23-p. 37, line 24).

OSHA investigated a prior case arising from an injury at a Clarion Hotel restaurant (Reale Dep. p. 38, line 14-, p. 39, line7), where it was alleged Pitco's Model 35C, on legs, tipped (Reale Dep. p. 40, lines 4-9). Mr. Reale testified in that case, in a deposition and believes the incident occurred in 2009, in West Virginia (Reale Dep. p. 86, line 7-p.87 line 3).

## ARGUMENT

### I. Plaintiff's alleged comparative culpable conduct cannot bar recovery and must be determined by a jury.

*Facci v. General Electric*, 192 A.D. 2d 991, 596 N.Y.S. 2d 928 (2d Dep't 1991) is squarely on point. In that case, plaintiff Facci, a young restaurant worker, like Jordan Hernandez, tasked with cleaning a GE Frymaster, was burned by hot oil spilled when he moved the fryer, using the wheels provided by the manufacturer. Based on evidence that both parties bore responsibility for the injury, "the determination of whose fault played the more critical role in its causation [was] properly left to the fact finder." *Id.*, *citing Opera v. Hyva, Inc.*, 86 A.D.2d 373, 379, 450 N.Y.S.2d 615 (4th Dep't 1982).

In *Facci*, as here, the defendant maintained that it was the method of carrying the oil,

4

inadequate instructions given plaintiff by his supervisors, and the condition of the floor where plaintiff slipped, rather than any defect in the fryer itself, that caused the accident. The Appellate Division held the jury must determine the appropriate allocation of comparative negligence. The same conclusion should be reached by the Court here.

In 1975, New York adopted CPLR § 1411, which states:

> In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, **shall <u>not</u> bar recovery**, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages. (emphasis added).

The language of CPLR §1411 is imperative: contributory negligence and assumption of risk cannot bar recovery, but instead go to apportionment of liability when calculating damages. Granting summary judgment based on Plaintiff's alleged comparative negligence or assumption of risk would, by definition, bar recovery. "The extent to which plaintiff assumed the risk of injury, if any, is an issue of his culpable conduct similar to comparative negligence and thus one for the jury to resolve." *Capuano v. Rochester Inst. of Tech.*, 71 A.D.3d 1592, 1593, 897 N.Y.S.2d 822, 823 (4th Dep't 2010).

"CPLR 1411 thus adopts a rule of pure comparative fault, so that in theory a plaintiff who is 99% responsible for his own injuries may still recover 1% of his damages." CPLR §1411 McKinney's Practice Commentaries, C1411:1. *See, e.g., Whalen v. Kawasaki Motors Corp.*, 92 N.Y.2d 288, 680 N.Y.S.2d 435, 703 N.E.2d 246 (1998) (where retailer of all-terrain vehicle found by jury to only be 8% at fault for the operator's injuries, with operator's comparative fault established at 92%, and recovery was calculated by discounting operator's comparative fault from judgment). The Practice Commentaries indicate four possible avenues by which a plaintiff's

conduct may be deemed to completely bar recovery, but none apply here, and, even if they did, none would warrant granting summary judgment based on the facts of this case.

First, plaintiff's conduct may be the sole cause of the injuries, but this is a determination that is almost always made by the trier of fact. The culpable conduct, if any, of a plaintiff serves only to proportionately diminish, as opposed to completely preclude, the amount of damages recoverable. "[I]t is for the jury to determine whether such negligence was the sole cause of the accident." *Cruz v. Gen. Elec. Co.*, 223 A.D.2d 486, 637 N.Y.S.2d 15 (1st Dep't 1996) (denying manufacturer's motion for summary judgment). Thus, summary judgment is inappropriate.

Only in the most extreme situations may a court find plaintiff's conduct was the sole cause of the injuries. For example, in *Howard v. Poseidon Pools, Inc.*, 72 N.Y.2d 972, 534 N.Y.S.2d 360, 530 N.E.2d 1280 (1988), an experienced swimmer's diving head first into a shallow, above-ground pool was held the sole proximate cause of injury. Here, no reasonable mind could argue that a teenage Chipotle employee following his supervisor's orders by wheeling a product, which was sold by its manufacturer with wheels, is anything like a head first dive into a shallow pool. There is no evidence in the record that Jordan Hernandez appreciated just how unstable the Pitco fryer was or how readily it would tip over. In fact, he thought it was safe to move the fryer, because it had wheels attached and he had moved it several times before without incident.

Second, no recovery is available to a plaintiff whose injuries are the direct result of his commission of serious criminal or illegal conduct. This is inapplicable here.

Third, an "express assumption of risk" by a plaintiff can preclude any recovery. *See generally, Arbegast v. Board of Education of South New Berlin Central School*, 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985). In *Arbegast*, the plaintiff was a high school teacher

6

who played a game of basketball in which participants rode on donkeys, and was injured when she fell off. *Id.* The New York Court of Appeals held that a plaintiff "expressly" assumes the risk of her injuries when she agrees, in advance, that the defendant "need not use reasonable care for the benefit of plaintiff," and the plaintiff in that case admitted she was informed of both the risk of injury and that she was participating in the game at her own risk. *Id.* at 169.

No such agreement has been made in this case. Plaintiff never agreed that Pitco need not use reasonable care. There is a distinct difference between a teenager moving a deep fryer per his fast food employer's direction and an adult who made an informed decision to play a game of "donkey basketball."

Fourth, plaintiffs can be completely barred from recovery under the doctrine of "primary assumption of risk." *Turcotte v. Fell*, 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964 (1986) (paralyzing injury suffered by professional horse racing jockey). This doctrine has most often been invoked in connection with voluntary participation in competitive athletics where, by choosing to participate, the plaintiff is deemed to have consented "to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation." *Id.* at 439. Jordan Hernandez was working at Chipotle, not participating in any sort of competitive athletics, thus, recovery cannot be barred.

"Doctrines like implied assumption of risk . . . are now subsumed under the comparative fault analysis." *See, Tripolone v. Genova Prod., Inc.*, No. 95-CV-1018, 1997 WL 583120, at *6 (N.D.N.Y. Sept. 3, 1997). Defendant's argument, sounding in implied assumption of risk, must be rejected, and the case should be presented to a jury for its analysis of comparative fault.

The year after the adoption of CPLR § 1411, the Fourth Department considered a products

7

liability suit, *Young v. Elmira Transit Mix, Inc.*, 52 A.D.2d 202, 383 N.Y.S.2d 729 (4th Dep't 1976). In *Young*, the plaintiff ordered cement from a company, used it in building his own home, and suffered third degree burns on his lower legs from lime, an ingredient in the cement.  *Id*. at 203. The court noted that "the dangers of irritations and burns from this ingredient have been known for centuries."  *Id*.  Despite the facts that plaintiff testified "he worked with different types of cement in odd jobs" and that all the expert witnesses at trial "agreed . . . that wet cement was dangerous when in direct contact with the skin and could burn people's skin through wet clothing," the court still held "the issue of plaintiff's contributory negligence was properly submitted to the jury." *Id*. at 204-5.

Here, Plaintiff did not order any product and was not working at his home, but instead used the deep fryer as instructed by his supervisor at work.  The dangers of irritations and burns from hot oil have, like those involved with cement, been known for a long time.  Jordan Hernandez, like the plaintiff in *Young*, also had experience working with the product that injured him.  There is agreement, as there was in *Young*, that hot oil is dangerous.  If the issue of plaintiff's contributory negligence was properly submitted to the jury in *Young*, in the instant case the fact-finders must be allowed to apportion fault between Jordan Hernandez and Pitco.

A few years after passage of CPLR § 1411, the New York Court of Appeals held, in the context of a products liability suit, that "it cannot be said, as a matter of law, that the plaintiff was contributorily negligent, for it was also within the province of the jury, taking into account the positions of the respective parties, to determine that the risk was unforeseeable to her." *Heller v. Encore of Hicksville, Inc.*, 53 N.Y.2d 716, 718, 421 N.E.2d 824, 825 (1981).  The Court of Appeals reversed, despite the Appellate Division's factual finding that the only reasonable explanation for

the incident was that plaintiff ignited the cotton, which was in her hair during part of a bleaching process, with a direct flame while lighting her cigarette. *Id*. at 716. Thus, a consumer, who directly lit her own hair on fire, was not found by the New York's highest court to have acted so negligently as to divest the jury from its fact-finding responsibility in considering whether that risk was unforeseeable to her. *Id*. at 717-18.

In *Hoover v. New Holland N. Am., Inc.,* 23 N.Y.3d 41, 54, 988 N.Y.S.2d 543 (2014), the New York Court of Appeals reaffirmed that a "manufacturer is under a nondelegable duty to design and produce a product that is not defective ... as of the time the product leaves the manufacturer's hands." (internal citations and quotation marks omitted)). Courts routinely reject Pitco's argument and instead hold that an employee's contravention of an employer's safety policy does not establish unforeseeable misuse as a matter of law. *See Milliman v. Mitsubishi Caterpillar Forklift Am., Inc.,* 594 F.Supp.2d 230, 245 (N.D.N.Y.2009) (employee's alleged misuse of machinery when he ignored his employer's policies to use safety tether and wear safety harness offered by manufacturer did not constitute unforeseeable misuse as a matter of law).

"Whether a particular way of misusing a product is reasonably foreseeable, and whether the warnings which accompany a product are adequate to deter such potential misuse, are ordinarily questions for the jury." *Johnson v. Johnson Chem. Co.*, 183 A.D.2d 64, 69, 588 N.Y.S.2d 607, 610 (2nd Dep't 1992). In *Johnson*, the plaintiff sustained personal injuries when a can of a product intended to combat roaches allegedly caused an explosion and started a fire in plaintiff's kitchen, after plaintiff activated the can. *Id*. at 64. The Appellate Division held "even if a plaintiff admits to failing to read a warning, "the reasonableness of her behavior is for the jury to decide." *Id*. at 64. The following rationale of the Appellate Division in *Johnson* is illustrative

9

of how the Court should analyze the issue of comparative fault on Pitco's motion:

> While plaintiff admittedly failed to read the warnings accompanying the product which instructed the user to put out all flames and pilot lights before use and to use only one can per room, plaintiffs are not thereby precluded from recovering on the basis of the alleged inadequacy of the warnings. The intensity of the language used in the text of a warning is only one of the factors to be considered in deciding whether such warning is adequate; a second factor to be considered is the prominence with which such language is displayed, and a consumer such as plaintiff who, by her own admission, tends to ignore one sort of label, might pay heed to a different, more prominent or more dramatic label. The reasonableness of her behavior is for the jury to decide. A manufacturer who issues insufficient warnings may not avoid liability solely on the basis that the plaintiff failed to read the warnings which were issued. Plaintiff's admitted failure to read the manufacturer's warnings concerning the use of the product does not necessarily sever the causal connection between the alleged inadequacy of those warnings and the occurrence of the accident; neither plaintiff should be deprived of recovery for this reason alone.

*Id*. at 64-65.

Jordan Hernandez testified that he never read the warning on the Pitco fryer, and that he never read any of the warnings in the fryer manual.  Plaintiff's expert, Dr. Fred Stolfi, testified in his deposition that he did not know whether a person operating the fryer would see the warning sticker  (Pitco Exhibit I, Stolfi Deposition pg. 148, lines 4-12).  The warning sticker on the fryer was visibly tattered and peeling so as to cover the words of warning on it.  (Pitco Exhibit E, pg. 4).  In fact, pictures from farther out (Exh. E, pgs. 2-3) show that the entire left side of the label was curled over itself, while a close-up shot of the label shows that someone had to hold the label down with his or her finger just to be able to read the text.  (Exh. E, pg. 4).

Summary judgment is thus precluded by issues of fact regarding: the "intensity of the language of the text;" the "prominence with which such language is displayed;" whether Pitco could have provided a label that does not tatter and peel over so as to cover its own words of warning; and the reasonableness of Plaintiff's behavior.

"Comparative fault **must** be determined by the trier of fact." *Wesp v. Zeiss*, 11 A.D.3d 965, 969, 783 N.Y.S.2d 439 (4th Dep't 2004) (emphasis added).  In *Wesp*, a surgical nurse was injured when she moved a 600-pound microscope and floor stand unit at the hospital.  *Id*. at 965.  The plaintiff's expert, while deemed not qualified to offer opinions on alternative designs, "was qualified to offer an opinion that the product was not reasonably safe for employees to move because of the degree of force required to move the microscope on its portable floor stand." *Id*. at 967.  Further, testimony from another nurse that one of the casters has been broken since the arrival of the microscope, and that it moved much more easily after it was fixed, helped to establish "circumstantial evidence sufficient to establish that the floor stand was defective when it arrived at the hospital." *Id*. at 968.

Jordan Hernandez was similarly injured when moving a large piece of machinery on the job.  Plaintiff's expert, Dr. Stolfi, opined that the fryer was not safe to move because its design requires one attempting to move it to apply force onto it:

> You know, so by pushing it on the top, you sort of have a tendency to make it fall over (indicating), you know, because you're applying a force at the very top of the fryer.
> So my feeling was if the force could be applied somewhere below the center of mass - - so there's a handle which, when you push the handle, it actually pushes the fryer below the center of mass. Then it won't have a tendency to, you know, fall over.

(Pitco Exh. I, pg. 105-06).

Plaintiff alleged in his complaint that "the PITCO Fryer was defective when it left the control of defendant" (Pitco Exhibit A, Plaintiff's Complaint, paragraph 19), that the fryer tipped over because of a defect in its wheels (paragraph 28), that Chipotle disposed of the wheels despite Plaintiff's attempt to preserve them for evidence.  Pitco has failed to rebut the allegations indicating

11

that the fryer was defective when delivered, providing "circumstantial evidence sufficient to establish that the" fryer "was defective when it arrived at" Chipotle.  As in *Wesp*, analysis of the circumstantial evidence and determination of comparative fault both **must** be determined by a trier of fact.

Pitco's clever framing of the question in terms of proximate cause, designed to avert clear New York law precluding summary judgment on liability bases on comparative negligence issues, cannot justify summary dismissal of Jordan Hernandez's action. "When, as is usually the case, circumstances permit varying inferences as to the foreseeability of the intervening act, the proximate cause issue is a question of fact for the jury." *Woodling v. Garrett Corp.,* 813 F.2d 543, 555–56 (2d Cir.1987) (citing *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315 (1980)).

Summary judgment must be denied, due to numerous genuine issues of material fact, including the extent to which Plaintiff assumed the risk, if at all; the degree of Plaintiff's comparative negligence, if any; the foreseeability of Plaintiff's misuse of the fryer, if any; the foreseeability of the risk of moving the fryer to Plaintiff, if any; whether the "intensity of the language of the text" on the fryer gave Plaintiff proper warning; whether "the prominence with which such language is displayed" on the fryer gave Plaintiff proper warning; whether Pitco could have provided a label that does not tatter and peel over so as to cover its own words of warning; and the overall reasonableness of Plaintiff's behavior.  *See generally, Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F. 3d 209 (2d Cir. 2002) (both foreseeability and causation quintessential questions for the jury).

## II. A jury could reasonably conclude that Defendant's fryer, when sold with a wheel assembly, was defective when used for a reasonably foreseeable purpose.

The Committee on Pattern Jury Instructions of the Association of Justices of the Supreme

Court of the State of New York promulgated Pattern Jury Instruction (PJI) 2:120 as the standard for products liability jury instructions.  1A N.Y. Pattern Jury Instructions (Civil), PJI 2:120.  In New York, a manufacturer or seller who sells a defective product is strictly liable for any injury that results from the product if it is being used either for its intended purpose **or a reasonably foreseeable purpose**.  A product is defective if it is not reasonably safe that is, if the product is so likely to harm persons or property that a reasonable person who had actual knowledge of the product's potential for producing injury, would conclude that it should not have been marketed in that condition.  The plaintiff has the burden of proving that the product was defective and that the defect was a substantial factor in producing the plaintiff's injury.  *See,* PJI 2:120.

The New York Court of Appeals requires proof of the following elements to establish a *prima facie* products liability claim:

> 1. The defendant was the manufacturer, seller or supplier of the alleged instrumentality of injury;
> 2. The product was defective in design or manufacture, or by reason of a failure to warn of an inherent danger;
> 3. The defect existed at the time the product left the defendant's hands;
> 4. The defect rendered the product "not reasonably safe";
> 5. The defect was a substantial factor in bringing about the plaintiff's injuries; and
> 6. At the time of the accident, the product was being used for the purpose and in the manner normally intended, ***or for an unintended but reasonably foreseeable purpose.***

*See, Sawyer v. Dreis & Krump Mfg. Co.*, 67 N.Y.2d 328 (1986); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (1983); *Velez v. Craine & Clark Lumber Corp.*, 33 N.Y.2d 117, 122 (1973); *Codling v. Paglia*, 32 N.Y.2d 330, 342 (1973).

In *Voss v. Black & Decker Manufacturing Co., supra*, 59 N.Y. 2d at 109, the New York Court of Appeals, evaluating a design defect claim, held a plaintiff must present evidence that "there was a substantial likelihood of harm and it was feasible to design the product in a safer

13

manner."   The manufacturer may defend against plaintiff's allegations by showing that "the product is a safe product" that is, "one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost."   The jury may impose liability when, after weighing the evidence and balancing the product's risks against its utility and cost, it concludes that the product, as designed, is not reasonably safe.

In its risk-utility balancing task, the jury may consider several factors.  For example, in *Voss,* the Court listed seven factors, not necessarily exhaustive:

> (1) the utility of the product to the public as a whole and to the individual user;
> (2) the nature of the product—that is, the likelihood that it will cause injury;
> (3) the availability of a safer design;
> (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced;
> (5) the ability of the plaintiff to have avoided injury by careful use of the product;
> (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and
> (7) the manufacturer's ability to spread any cost related to improving the safety of the design.

*Voss,* 59 N.Y. 2d at 110; *see also, Denny,* 87 N.Y.2d at 257.

To show that a product was not reasonably safe and thus defectively designed, plaintiffs must show that: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.,* 199 F.Supp.2d 53, 83 (S.D.N.Y.2001) (citing *Voss,* 59 N.Y.2d at 108).

Plaintiff claims Pitco's Fryer is defective when sold with an optional wheel assembly, as occurred when Pitco sold the subject Fryer to Chipotle (Pitco Exhibit C).  The risk-utility analysis includes consideration of a feasible, safer alternative design that would have prevented or

14

minimized plaintiff's injuries. Here, through Dr. Stolfi, Plaintiff has provided expert testimony from an experienced professor of engineering design at a distinguished Ivy League University regarding feasible alternative design concepts that would have prevented or minimized Mr. Hernandez's injuries when considering Pitco's fryer was sold with an optional wheel assembly. Consideration of such analysis falls squarely within the province of the jury.

Plaintiff pleaded negligence, strict liability, and breach of warranty (Complaint, Pitco Exhibit A).  In *dicta* in *Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 258 (1995), the New York Court of Appeals quoted with approval a commenter's observation that "in general, the strict liability concept of 'defective design' is functionally synonymous with the earlier negligence concept of unreasonable designing."  The New York Court of Appeals later clarified that "the [design defect] standards set forth in *Voss* apply to both" strict liability and negligence claims. *Adams v. Genie Indus., Inc.,* 14 N.Y.3d 535, 543 (2010); *see also Wick v. Wabash Holding Corp.,* 801 F. Supp. 2d 93,107 (W.D. N.Y. 2011).

Given Plaintiff's undisputed personal injury, Pitco cannot substantively challenge Plaintiff's breach of warranty claim for lack of privity.  *DiBartolo v. Abbott Labs.,* 914 F.Supp.2d 601, 624–25 (S.D.N.Y.2012) (discussing UCC "personal injury" exception to breach of warranty privity requirement); *see also Koenig v. Boulder Brands, Inc.,* 995 F.Supp.2d 274, 290 (S.D.N.Y.2014) ("[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured.").

Pitco's motion to dismiss Plaintiff's implied warranty claim, on limitations grounds, appears to be well taken, however, based on the date Chipotle purchased the Fryer (Pitco Exhibit C).

### III. Whether Pitco's warnings were sufficient is a question for the jury.

Under New York law, "[a] plaintiff may recover in strict products liability for the manufacturer's failure to warn of the risks and dangers associated with the use of its product. That duty generally extends to warning ultimate consumers of the dangers resulting from the foreseeable use of the product." *Urena v. Biro Mfg. Co.,* 114 F.3d 359, 365–66 (2d Cir.1997) (internal citations omitted). "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known" and "**of the danger of unintended uses of a product provided these uses are reasonably foreseeable**." *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237 (1998) (internal citation omitted, emphasis supplied).

"A manufacturer ... may ... incur liability for failing to warn concerning dangers in the use of a product which come to his attention after manufacture or sale, through advancements in the state of the art, with which he is expected to stay abreast, or through being made aware of later accidents involving dangers in the product of which warning should be given to users." *Cover v. Cohen,* 61 N.Y.2d 261, 274–75 (1984). "Unlike design decisions that involve the consideration of many interdependent factors, the inquiry in a duty to warn case is much more limited, focusing principally on the foreseeability of the risk and the adequacy and effectiveness of any warning." *Liriano,* 92 N.Y.2d at 239.

The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Urena,* 114 F.3d at 365–66 (quoting *Beyrle v. Finneron,* 199 A.D.2d 1022, 1023 (4th Dep't 1993)); *see also Arbaiza v. Delta Int'l Mach. Corp .,* No. 96–cv–1224 (RJD), 1998 WL 846773, at *7 (E.D.N.Y. Oct. 5, 1998) ("The case law suggests strongly that the question of whether a particular warning

was adequate is a question of fact that should be left to the jury.") (collecting cases). As the New

York Court of Appeals held:

> The nature of the warning to be given and to whom it should be given likewise turn upon a number of factors, including the harm that may result from use of the product without notice, the reliability and any possible adverse interest of the person, if other than the user, to whom notice is given, the burden on the manufacturer or vendor involved in locating the persons to whom notice is required to be given, the attention which it can be expected a notice in the form given will receive from the recipient, the kind of product involved and the number manufactured or sold, and the steps taken, other than the giving of notice, to correct the problem.... Generally, the issue will be one of fact for the jury whose function will be to assess the reasonableness of the steps taken by the manufacturer or vendor in light of the evidence concerning the factors listed above presented in the particular case, as well as any expert testimony adduced on the question.

*Cover v. Cohen, supra,* 61 N.Y.2d at 276–77 (internal citations omitted).

The mere existence of the warnings identified by Pitco is insufficient, as a matter of law, to rule that Pitco discharged its duty to warn. It is for the jury to decide whether warnings provided by Pitco were adequate given the circumstances of this case. *See, e.g. Duval v. Delta Machinery Corp.* 2105 WL 4522911 * 6-7 (S.D.N.Y. 2015).

### IV. Columbia University Expert Fred Stolfi, Ph.D, qualified and reliable, provided testimony and a report raising material issues of fact for trial.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court provided a non-exhaustive list of factors for a district court to consider when determining whether an expert's specialized knowledge will assist the trier of fact. Congress subsequently amended Rule 702 of the Federal Rules of Evidence Rule to incorporate Daubert. The *Daubert* factors include: "[1] the theory's testability, [2] the extent to which it has been subjected to peer review and publication, [3] the extent to which a technique is subject to standards controlling the technique's operation, [4] the known or potential rate of error, and [5] the degree of acceptance within the

relevant scientific community." *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (internal quotation marks omitted). "These factors do not constitute . . . a definitive checklist or test," and the inquiry "will necessarily vary from case to case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (internal quotation marks omitted).

Rule 702 has two prerequisites: (a) the witness must be qualified as an expert in scientific, technical or specialized matters (*Stagl v. Delta Air Lines*, 117 F.3d 76, 81 (2nd Cir. 1997)); and (b) the expert's testimony will assist the trier of fact in understanding the evidence and determining the facts at issue. *U.S. v. One Parcel of Property*, 930 F.2d 139, 141 (2nd Cir. 1991). What is required is that the proffered testimony is relevant and reliable. *Daubert v. Merrill-Dow*, 509 U.S. 579 at 589-91 and 597. The court's role as gatekeeper is tempered by the liberal thrust of the Federal Rules of Evidence and the "presumption of admissibility." *Borawick v. Shay*, 68 F. 3d 597, 620 (2d Cir. 1995), cert. denied 517 U.S. 1229 (1996).

Rule 702 must be liberally interpreted when evaluating experts' qualifications. *Nimely v. City of N.Y.*, 414 F.3d 381, 395-96 (2d Cir. 2005); *Stagl v. Delta Airlines, Inc.*, 117 F.3d 76, 80 (2d. Cir. 1997); *Lappe v. American Honda Motor Co., Inc.*, 857 F. Sup 222, 227 (N.D.N.Y 1994); *Schwab v. Philip Morris, U.S.A., Inc.*, 449 F. Supp. 2d 992, 1133 (E.D.N.Y. 2006) ("assertions that the witness lacks particular educational or experiential background go to the 'weight, not the admissibility, of the [testimony].'") (*quoting McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)). A witness may qualify as an expert under Rule 702 on the basis of educational and experiential qualifications in a general field closely related to the subject in question. *Schwab*, 449 F. Supp. 2d at 1133. In *Stagl*, 117 F.3d at 80, the Second Circuit held that the district court erred in finding plaintiff's expert unqualified to assess alternative safety measures where his expert

knowledge in "interactions[s] between machines and people" qualified him to testify on "airline terminal or baggage claim area design."

When reviewing the admissibility of an expert's testimony under *Daubert*, "the court must first discern whether the *Daubert* test is even applicable to determine the admissibility of [the] testimony." *Bericochea-Cartagena v. Suzuki Motor Co., Ltd.*, 7 F. Supp. 2d 109, 112 (D. Puerto Rico 1998); *see also, Lappe v. Amer. Honda Motor Corp.*, *supra,* 857 F. Supp. at 228 (N.D.N.Y. 1994) ("*Daubert* only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific and technical knowledge.").

The testimony to be provided by Professor Stolfi is not "novel."  Dr. Stolfi has taught engineering design  professor at Columbia University for over fifteen years, and will testify as to the design of a mechanical structure, Pitco's fryer.  Pitco argues Dr. Stolfi should be precluded from testifying because he is not a "fryer expert".  Pitco's assertion is incorrect.  "The question is not whether the engineer is an expert on the exact issues presented in the case but rather, whether his general engineering experience qualifies him to testify in an area in which he does not have extensive experience." *Emig v. Electrolux Home Prod. Inc.*, 2008 WL 4200988, *5 (S.D.N.Y. 2008).

"The Second Circuit's standard for admissibility of expert testimony is especially broad." *Clarke v. LR Systems*, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002) (*citing Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d. Cir. 1996)).  When the basis for the expert's opinion is his scientific reasoning behind his years of experience and training, his opinion constitutes scientific knowledge which is sufficiently reliable and admissible as expert testimony. *Becker v. National Health Prod., Inc.*, 896 F. Supp. 100, 103 (N.D.N.Y 1995).  It is not's the court's

obligation to weigh the "correctness" of an expert's opinion or to choose between conflicting opinions.  *Travelers v. Gen. Elec.*, 150 F. Supp. 2d 360, 364 (D. Conn. 2001).

*Stagl v. Delta Air Lines Inc.*, 117 F. 3d 76 (2d Cir. 1997) is instructive. In *Stagl*, a machine and human interactions expert was allowed to testify on behalf of a plaintiff who was injured on a baggage carrousel.  In *Stagle*, the defense argued that plaintiff's expert should be precluded because he had no experience in airport terminals or in baggage claims designs, just as Pitco argues here that Dr. Stolfi is not a "fryer expert."  The Second Circuit in *Stagl* allowed the testimony because the expert, while lacking experience as to airports and baggage claim machines, did have experience in how humans interacted with machinery.  The expert testimony was upheld based on the expert's years of expertise in engineering.  The court looked to the expert's college education in mechanical engineering and the fact that he had worked as a mechanical engineer for over 20 years.

The arguments raised by Pitco with respect to Dr. Stolfi were raised, considered, and rejected by the court in *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 176 (E.D.N.Y. 2008) In *Humphrey*, the district court rejected the defense argument challenging an expert with a Ph.D. in Engineering Science from Columbia University, who, like Dr. Stolfi, was a member of several professional organizations and self-employed as an engineering consultant and, in that capacity, analyzed accidents and evaluated the safety of, or malfunctions of, various products. The court, in *Humphrey* held the witness was qualified to render an expert opinion despite not having any specific experience with the table saw that caused the personal injury. *See also, Powers v. Husqvarna Forest and Garden Co.*, 2004 WL 2202652, *2 (W.D.N.Y. 2004) (having determined that someone is a qualified engineer to explain and opine on underlying scientific principles,

*Daubert* does not require exclusion of his testimony).

Here, Dr. Stolfi has extensive training and education in the fields of mathematics and mechanical engineering, qualifying him to testify as to the mechanical components, the materials, and the warnings comprising the fryer at issue.  Dr. Stolfi is a mechanical engineer testifying as to a product designed by Pitco's mechanical engineers.  He has nearly thirty years of experience in the various fields involving analysis of mechanical components and systems.  He is a member of ten different professional organizations including, among others, ASME (American Society of Mechanical Engineers).  He has taught numerous courses at Columbia University and Rensselaer Polytechnic Institute including courses on engineering design, thermodynamics, fluid mechanics, vibrations in machines, mechatronics & embedded microcomputer control, review of fundamentals of engineering, and developing a course on using Computer Aided Design ("CAD") to design reliable mechanical products.  Prior to his career in academia, Dr. Stolfi worked in industry for nearly thirty years. Among his varied projects, Dr. Stolfi worked on the design and development of a NASA satellite.

Dr. Stolfi can provide testimony helpful to the jury regarding the manner in which Pitco designed the fryer, reasonable alternative designs, and the necessity and appropriateness of warning labels.  His opinions are to a reasonable degree of professional and technical certainty based upon sworn testimony, facts, research materials, well-settled scientific, mathematic, and engineering principles, and his practical knowledge, training, experience, and skills.

Dr. Stolfi's opinions are not based on speculation and conjecture; they are supported both by testimony and documents produced in discovery.  Dr. Stolfi's testimony will aid the trier of fact in understanding the relationship between industry standards, safety standards, the types of safety

controls available to the industry, and failures on the part of Pitco's mechanical engineers.

Pitco also contends Dr. Stolfi's testimony is unreliable.  This argument is similarly unavailing.  The focus of Pitco's contention regarding Dr. Stolfi's methodology is that he never physically inspected the fryer, constructed a prototype, etc.  Dr. Stolfi testified at his deposition, however, that he inspected documents and photographs produced by the parties of the fryer, including specifications of the fryer provided by Pitco, spoke with Jordan Hernandez about the incident and how it occurred, and reviewed the deposition testimony of Pitco's employee concerning the design of the fryer.  Based upon his review of the relevant facts and circumstances, Dr. Stolfi concluded that the center of gravity should have been lower on the fryer to reduce the propensity of the fryer to tip over when it was moved.  He also concluded that Pitco failed to adopt reasonable safety controls that would have prevented or at least mitigated the personal injuries Jordan Hernandez suffered as a result of the fryer's defects.   Dr. Stolfi's description of his methodology, detailed in his report, which formed the basis of his conclusions, is sufficiently reliable to allow his opinions to be admitted into evidence.

At most, Pitco's aspersions regarding Dr. Stolfi's methodology go to the weight of his expert testimony, not its admissibility.  *See, Emig, supra*, *citing, Figuera v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003) (allowing proffered expert's opinion based on his experience, education, and knowledge alone, and finding that any argument about the lack of testing or data or textual support for his opinion implicates the weight, not the admissibility, of his testimony).

Under *Daubert*, contrary to Pitco's suggestion, experts are not required to conduct tests. The Federal Rules of Evidence specifically provide that an expert may rely on facts or data

perceived by or made known to the expert, and therefore, need not conduct independent tests. *Allstate Ins. Co. v. Gonyo, supra*, 2009 WL 1212481 at *6 (N.D.N.Y. 2009), *quoting Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000); s*ee also, Robinson v. Garlock Equip. Co.*, 2009 WL 104197 (W.D.N.Y. 2009) (had the expert conducted experiments/tests, such tests would have gone to the weight the jury would give the evidence and not towards admissibility); *Windham v. Circuit City*, 420 F.Supp.2d 1206, 1212 (D. Kan. 2006) (lack of independent testing may go to the weight and not the admissibility of the testimony). What is critical is not whether plaintiff's expert has done his/her own tests, but whether the proffered expert's theory is "capable of being tested" and that test can occur within the crucible of cross examination. *Allstate Ins. Co. v. Gonyo, supra*, 2009 WL 1212481 at *6, *citing Travelers*, *supra*, 150 F. Supp. at 366); *see also, Seeley v. Hamilton Beach/Proctor-Silex, Inc*., 349 F.Supp.2d 381, 387 (NDNY 2004).

The official comment to Rule 702 notes: "A review of the caselaw after Daubert shows that rejection of expert testimony is the exception rather than the rule." F.R.E. 702 (2000 Amendment). A court's task is not to decide the correctness of an expert's opinion nor choose between competing opinions. Where movant's objections go to the weight of the testimony, not the admissibility, such objections are better suited to be scrutinized through the heat of the adversary system. *Allstate Ins. Co. v. Gonyo, supra*, 2009 WL 1212481 at *7, *citing Ambrosini v. LabarraqueI*, 101 F.3d 129, 133-35 (D.C. Cir. 1996); *see also, Inam International v. Broan-Nutone, LLC*, 2007 WL 4730649 at *4. fn 18) (ND Ga. 2007)("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking allegedly "shaky" but admissible evidence").

23

## CONCLUSION

Defendant's motion for summary judgment should be denied.

Dated: Buffalo, New York
      August 29, 2018

                   **ZDARSKY, SAWICKI & AGOSTINELLI** LLP

                   s/**GERALD T. WALSH**

By: _____

                   Gerald T. Walsh,
                   Daniel J. Bobbett, of counsel
               *Attorneys for Plaintiff Jordan M. Hernandez*
               1600 Main Place Tower
               350 Main Street
               Buffalo, New York 14202
               (716) 855-3200
               gtwalsh@zsa.cc
               dbobbett@zsa.cc

TO:   **GOLDBERG SEGALLA** LLP
       Susan E. Van Gelder, Esq.
       665 Main Street, Suite 400
       Buffalo, New York 14203
       (716) 566-5400
       svangelder@goldbergsegalla.com

       **SEYFARTH SHAW, LLP**
       P. Shawn Wood, admitted *pro hac vice*
       233 S. Wacker Drive, Suite 8000
       Chicago, Illinois 60606
       312-460-5657
       SWood@seyfarth.com
       *Attorneys for Defendant Pitco Frialator, Inc.*