**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

JORDAN M. HERNANDEZ,

                  Plaintiff,

        v.                          **DECISION AND ORDER**
                                        15-CV-1079-A

PITCO FRIALATOR, INC.,

                  Defendant.

_____

## INTRODUCTION

On the evening of September 27, 2012, Plaintiff Jordan Hernandez sustained injuries when a deep fryer manufactured by Defendant Pitco Frialator, Inc. tipped over while Plaintiff was moving the fryer to clean behind it in a Chipotle restaurant on Transit Road in Williamsville, New York. Plaintiff, who was 19 or 20 years old at the time, was working at the Chipotle as an employee. While moving the fryer (a large, wheeled appliance), hot oil spilled on Plaintiff and he sustained second- and third-degree burns, mostly to his back, arm, and face, but also to his ear and shoulders. _See_ Dkt. No. 46-2, pp. 9-12 (photographs of Plaintiff's burn injuries).

Plaintiff commenced this products liability lawsuit against Defendant in August 2015 in New York State Supreme Court, County of Erie, alleging six causes of action in his Complaint: (1) negligence; (2) strict products liability based on design defect, manufacturing defect, and sale of a defective product; (3) breach of express warranty; (4) breach of implied warranty; (5) failure to warn; and (6) failure to recall/

1

retrofit a defective product.  *See* Dkt. No. 1-2; Dkt. No. 44-3.  In December 2015, the case was removed to the Western District of New York.  *See* Dkt. No. 1.  The case was then referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1) for the conduct of pretrial proceedings.

Defendant later filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 44), and the Magistrate Judge issued a Report and Recommendation (Dkt. No. 49) recommending that Defendant's motion for summary judgment be granted in part and denied in part.

Specifically, the Magistrate Judge recommends granting partial summary judgment to Defendant on the causes of action for strict products liability based on manufacturing defect, breach of express and implied warranties, and failure to recall/retrofit, as Plaintiff either conceded that summary judgment should be granted on those claims or failed to oppose Defendant's argument that those claims should be dismissed.  Plaintiff has not objected to that recommendation, as was confirmed during oral argument on the objections.  As such, the Court adopts that portion of the Report and Recommendation and finds that no further discussion of those causes of action is necessary.

The Magistrate Judge also recommends, however, denying summary judgment on the causes of action for negligence, strict products liability based on design defect and sale of a defective product, and failure to warn,[1] and to set this case for trial on those three causes of action.  Before the Court are Defendant's

---

[1] As is further explained below, the Magistrate Judge recommends denying summary judgment on the failure to warn claim, in part.

objections (Dkt. No. 52) to that portion of the Report and Recommendation, arguing that the entire Complaint should be dismissed.  In the same papers, Defendant also appeals the Magistrate Judge's non-dispositive Decision and Order not to strike testimony of Plaintiff's prospective expert witness, Dr. Fred Stolfi (hereinafter, "Dr. Stolfi").

The Court heard oral argument on Defendant's objections on January 26, 2022, and reserved decision.  For the reasons set forth in detail below, the Report and Recommendation is ADOPTED in part and REJECTED in part, Defendant's motion to exclude Plaintiff's expert is GRANTED, Defendant's motion for summary judgment is GRANTED in its entirety, and the Complaint is DISMISSED in its entirety.

## FACTUAL BACKGROUND[2]

As Plaintiff described the accident during his deposition, the deep fryer was used to make chips, only, and it was always shut off after either the morning shift or at the 3:30 p.m. shift change—the latter, if it was needed a second time during the day.  The fryer was pushed up against the wall of the "grill station" and was situated between a grill and a cooler.  It was Plaintiff's job as a grill employee to clean behind the fryer and other commercial appliances as part of Chipotle's closing procedure.

About a week before the incident, Plaintiff's general manager instructed him to move the fryer across the room rather than just pull it out a couple of feet from the

---

[2] These facts are those gleaned by the Court as the essential facts pertaining to the motion for summary judgment, aside from those additional facts referred to below.  They are taken from the materials submitted by the parties in support of and in opposition to Defendant's motion.

wall as he had done in the past, so that the whole area could be cleaned better. Plaintiff was able to move the fryer because it was equipped with "casters." Plaintiff's expert defined casters as "sort of small wheels . . . usually [used] for heavy equipment that you want to move from one place to another."  Dkt. No. 44-11, p. 22. The Court hereinafter refers to the fryer's casters simply as "wheels."

When Plaintiff went to move the fryer on September 27, 2012—the night of the accident—he assumed that it had been turned off since at latest 3:30 p.m. at the shift change, and that the fryer would be cool to the touch.  However, unbeknownst to Plaintiff until a later date, when he was promoted by Chipotle to various management positions, a "pilot" button (separate from the "off" button) remained on. The pilot button kept the fryer hot enough to burn him; Plaintiff estimated that temperature as "[h]igh hundreds" of degrees.

That night, Plaintiff moved the fryer about 15 feet away from the wall and cleaned behind it.  He testified that in pushing the fryer back to its original position against the wall, he had reached the food prep/ grill area, only a couple feet from his intended destination for the fryer, when "the way that I understand [it] is that one of the wheels locked up and it started to fall forward, and my momentum was going with it, so I tripped over it as it was falling and I ended up on the other side of it.  The top fell off and the oil spilled all over me."  Thus, according to Plaintiff, he fell over the entire fryer.  He later explained, "What I'm saying is, I don't know if a wheel locked up or if there was something on the floor, but one of the wheels stopped moving."  Plaintiff agreed that he did not know if the fryer stopped because the wheel hit something or because of an issue with the wheel itself.

4

When he was pushing the fryer, Plaintiff was situated at its front, where the door is located.  On the door was affixed a yellow and blue warning sticker that read, in part, "**For your protection, do not move this unit unless hot liquids are completely drained.**"[3]  Plaintiff admitted that he did not read the warning sticker before he moved the fryer that day—stating that he did not notice the sticker—and that he had not read any of the warnings in the fryer manual.  Plaintiff testified that at the time no one had ever provided him with the fryer manual, and he did not know where it was located.  The manual includes warnings about not moving the fryer while it is "at operating temperature or filled with hot shortening oil," and that protective gear should be worn when using the hot fryer.

Prior to the incident, Plaintiff had never opened the front door to the fryer, which contained further warnings on the inside.  One warning read, in part,

"**APPLIANCE SHOULD NOT BE MOVED WITHOUT FIRST DRAINING ALL LIQUIDS FROM TANK, OTHERWISE, INJURY COULD RESULT.**"

In sum, two warnings not to move the fryer when it had liquids or hot liquids in it were on the fryer, one inside the fryer and one on its front.  According to Plaintiff,

---

[3] Photographs of the subject fryer and warnings are in the record at Dkt. Nos. 44-7 and 44-8, exhibits to Defendant's motion for summary judgment that were both marked as exhibits at Plaintiff's deposition.  The Court notes that at the deposition, Plaintiff did not testify that they were fair and accurate depictions of the fryer and the warnings, nor did he explain who took the photographs.  During oral argument, the Court clarified this point, with the parties agreeing that the photographs were of the subject fryer, and the fryer had no wheels in the photographs and was instead bolted to the floor because the wheels had been removed and either lost or destroyed by the time the photographs were taken.  There were no photographs from the date of the accident; rather, the photographs of the fryer were taken at an inspection by the defense expert after the accident.

no one at Chipotle ever advised him not to clean or move the fryer unless the oil was cool or suggested that he drain the oil prior to moving the fryer.

Plaintiff admitted he did not notice or read the warnings but was aware of the risks, *i.e.*, that aside from the warnings, he already understood that fryers contain hot oil, and hot oil can burn an individual's skin if it comes into contact with the skin when the fryer is turned on.  Plaintiff testified that at the time of the incident he did not know to drain any oil out of the fryer before moving it.  However, he also acknowledged that other Chipotle employees, who cleaned the fryer itself, drained the oil from the fryer and let the fryer cool first before moving it.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made.

Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court concludes that, contrary to the recommendation by the Magistrate Judge, Defendant's motion for summary judgment shall be granted in its entirety, for the reasons elucidated below.

The Magistrate Judge also issued a Decision and Order concerning a non-dispositive motion, *i.e.*, Defendant's motion to disqualify Plaintiff's expert witness, which will not be reversed by this Court unless it is "clearly erroneous or contrary to law."  *See* 28 U.S.C. § 636(b)(1)(A); *see also Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F. Supp. 2d 413, 415 (W.D.N.Y. 2005).  A finding is "clearly erroneous"

when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court determines that while it was not clearly erroneous or contrary to law to conclude that Dr. Stolfi has the requisite qualifications to render an opinion in this case on the design defect claim, the Court disagrees with the Magistrate Judge's conclusion that Dr. Stolfi's opinions and methodology are reliable. As such, the Court concludes that Dr. Stolfi's expert testimony is not admissible.

## I.     Admissibility of Expert Testimony Under Federal Rule of Evidence 702

Defendant asserts that Dr. Stolfi is insufficiently qualified to render design-defect testimony and he has failed to demonstrate the reliability of the methodology on which his opinion is predicated, and thus his testimony should be precluded.

The admissibility of expert testimony is evaluated under Federal Rule of Evidence 702, and that rule requires the district court to make several determinations prior to allowing expert testimony:  whether (1) the witness is qualified to be an expert; (2) the proffered opinion is based upon reliable data and methodology; and (3) the expert's testimony on a particular issue will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 181, 396-397 (2d Cir. 2005).[4]

---

[4] Even if all three requirements of Rule 702 are met, the district court must then analyze the testimony under the balancing test of Rule 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

The responsibility of the trial judge is to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  The Court's "gatekeeping function applies to scientific expert testimony as well as technical and other specialized knowledge such as engineering."  *Pinello v. Andreas Stihl AG & Co. KG*, 8:08-CV-00452 (LEK/RFT), 2011 WL 1302223, 2011 U.S. Dist. LEXIS 34460, *16 (N.D.N.Y. Mar. 31, 2011); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

**A.  *Qualifications***

"Whether a proffered witness qualifies as an expert by 'knowledge, skill, experience, training, or education' is a threshold question to be determined before inquiring into the relevance or reliability of the proffered testimony."  *Emig v. Electrolux Home Prods.*, Case No. 06-CV-4791 (KMK), 2008 U.S. Dist. LEXIS 68811, *20 (S.D.N.Y. Sept. 10, 2008), citing *Nimely*, 414 F.3d at 396 n.11 and quoting Fed. R. Evid. 702.  "Courts in the Second Circuit liberally construe the expert qualifications requirement, in that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience."  *Greasley v. United States*, 15-CV-642-A, 2021 WL 935731, 2021 U.S. Dist. LEXIS 46094, *70 (W.D.N.Y. Mar. 11, 2021) (internal quotation marks and citations omitted).

The Court agrees with the Magistrate Judge's conclusion that Dr. Stolfi is qualified to present expert testimony on the fryer's design and alternative designs, thereby overcoming the first hurdle of testifying as an expert.  Dr. Stolfi has a Ph.D.

in Mechanical Engineering, among other background experience in that subject

area, yet Defendant argues that Dr. Stolfi has no background in deep fryer design or

operation and therefore his testimony should be precluded.  The Magistrate Judge

disagreed, summarizing at length Dr. Stolfi's qualifications, *see* Dkt. No. 49, pp. 27-

29, which the Court will not rehash here, and reasoning:

> . . . Dr. Stolfi does have extensive education and
> experience with mechanical engineering and design
> concepts. Significantly, the design elements at issue in
> this case are not so complicated that such specific
> education and experience are required, and Dr. Stolfi's
> more generalized engineering education and experience
> will suffice, and any lack of specific education and
> experience with deep fryers goes not to Dr. Stolfi's
> qualification as an expert and, thus, his testimony's
> admissibility but, rather, to the weight of such testimony . .
> . Nor can it be reasonably disputed that the field of
> mechanical engineering enables one trained in its
> understanding and application of generally accepted
> principles of physics, such as the concept of a high or low
> center of gravity, to effectively engage in the feasible and
> safe design of commercial products involving mechanical
> features such as a movable deep fryer . . . Accordingly,
> Defendant's argument that Dr. Stolfi is not qualified to
> present expert testimony regarding the deep fryer's design
> and alternatives is without merit.

Dkt. No. 49, pp. 29-30 (collecting cases).  As this Court has previously observed, "a

review of an expert's qualifications *should not be so narrow as to limit the source of*

*experts to only those persons with direct experience in the relevant industry* . . . [but]

an expert may opine on matters within the reasonable confines of his subject area,

and cannot render expert opinion on an entirely different field or discipline."  *Dreyer*,

367 F. Supp. 2d at 416 (emphasis added, internal quotation marks and citations

omitted).

The Court agrees with the Magistrate Judge that Dr. Stolfi need not be an expert in deep fryers and their design; rather, Dr. Stolfi may be qualified as an expert in mechanical engineering and/or design to render an opinion on the existence of a design defect.  *See* Dkt. No. 46-3, pp. 20-23 (Dr. Stolfi's Curriculum Vitae).

Dr. Stolfi's lack of experience with commercial deep fryers and lack of a professional engineering license or other credentials goes to the weight of his testimony, not its admissibility, and hence his testimony is not precluded on those bases.  *See, e.g.*, *Emig*, 2008 U.S. Dist. LEXIS 68811, at *20 ("The Court also is unpersuaded by Defendants' argument that Gorsak fails to qualify as an expert because, while he holds a Bachelor's degree in Mechanical Engineering Technology, he does not hold a professional engineering license and did not receive a post-graduate education in engineering.  In fact, it is well-settled that, to be an expert, a person need not hold a particular degree or license.  Indeed, it is not uncommon for a person to qualify as an expert based on his or her experience alone."); *Santoro v. Donnelly*, 340 F. Supp. 2d 464, 473 (S.D.N.Y. 2004) ("The question is not whether the engineer is an expert on the exact issues presented in the case, but rather, whether his general engineering qualifies him to testify in an area in which he does not have extensive expertise.").

### B. *Reliability and Relevance*

Even though Dr. Stolfi has the necessary qualifications due to his "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, "[a]n otherwise well-credentialed expert's opinion may be subject to disqualification if he fails to employ investigative techniques or cannot explain the technical basis for his opinion."

*Dreyer*, 367 F. Supp. 2d at 416-417 (internal citation omitted).  "In assessing the reliability of proffered expert testimony, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

The Court concludes, upon its review of Dr. Stolfi's expert report (Dkt. No. 46-3, pp. 7-19), deposition testimony (Dkt. No. 44-11), and declaration in opposition to Defendant's motion for summary judgment (Dkt. No. 46-3, pp. 1-6), that Dr. Stolfi failed to articulate the scientific or technical basis for his opinion.  Thus, his opinion is not reliable.

Dr. Stolfi's report outlines three "Suggested Design Changes" to the fryer, based on his conclusion that the fryer had a "natural tendency to tip" when pushed at its top, as he asserts Plaintiff did here.  These proposed design alterations are meant to mitigate or prevent injury by addressing that purported tendency to tip over. Dr. Stolfi explains that Defendant's design engineers should have taken into consideration in their design choices the fact that the fryer is sold with wheels, an optional accessory that Chipotle purchased for the subject fryer.  When the fryer is purchased with the optional wheels, Defendant should have assumed that the fryer's user may try to move the fryer when it is full of hot oil.

The proposed alternative designs are (1) a weighted base attached to the fryer, to lower the center of gravity and render it less likely to tip over; (2) a temporary, "low" handle that attaches "somewhere below the oil tank" to facilitate

11

moving the fryer, which would allow users to push or pull the fryer below the center

of gravity, and thus make the fryer less likely to tip over; and (3) a locking lid instead

of the standard lid that just sits atop the fryer, to cause the oil to spill out more slowly

and provide the user with more time to move away from hot oil should it spill.

According to Dr. Stolfi, both the handle and the lid would be attached to the fryer

magnetically or with some sort of mechanical device.

At first blush, these alternatives make sense conceptually. However, upon

review of Dr. Stolfi's deposition testimony, it becomes quite clear that his

methodology is flawed, and his assertions are baseless.

Case law is unequivocal that "…nothing in either *Daubert* or the Federal

Rules of Evidence requires a district court to admit opinion evidence that is

connected to existing data only by the *ipse dixit* of the expert. A court may conclude

that there is simply too great an analytical gap between the data and the opinion

proffered." *GE v. Joiner*, 522 U.S. 136, 146 (1997); *see Amorgianos*, 303 F.3d at

266-267 ("[W]hen an expert opinion is based on data, a methodology, or studies that

are simply inadequate to support the conclusions reached, *Daubert* and Rule 702

mandate the exclusion of that unreliable opinion testimony . . . In deciding whether a

step in an expert's analysis is unreliable, the district court should undertake a

rigorous examination of the facts on which the expert relies, the method by which

the expert draws an opinion from those facts, and how the expert applies the facts

and methods to the case at hand."); *Figueroa v. Boston Sci. Corp.*, 254 F. Supp. 2d

361, 365-366 (S.D.N.Y. 2003) ("an expert basing his opinion solely on experience

must do more than aver conclusorily that his experience led to his opinion.") (internal quotation marks and citations omitted).

Dr. Stolfi admitted he did not have any of the details regarding the design of the subject fryer that he needed to render a "detailed design" of his proposed alternative designs. Indeed, he repeatedly stated that he did not form any "opinions" or "conclusions" in this case; rather, he formulated what he called these three "concepts" or "conceptual designs" based simply on "engineering intuition"; "feeling[s]"; and the design method he teaches, which is "in [his] head." Thus, Dr. Stolfi's alternative designs rest solely on his own expertise or authority, in other words, his *ipse dixit*.

Moreover, Dr. Stolfi testified as to each of the alternative designs that he performed no tests or measurements, built no prototypes, did no calculations, and performed neither a cost-benefit analysis nor a risk analysis.[5] In addition, he was unaware of whether any commercial deep fryers in the stream of commerce had a design such as the temporary handle, and he had no knowledge of how many fryer manufacturers sell a fryer with a design similar or identical to the Pitco fryer at issue (as to the latter, he testified that "[t]here must be a few, but I don't know off the top of my head"). Dr. Stolfi did not undertake any accident reconstruction, and he never visited the scene of the accident. He saw photographs of the fryer involved, but he did not inspect the fryer or any other Pitco fryer. Dkt. No. 44-11, p. 17.

---

[5] A risk analysis is an analysis of whether the proposed design changes would create additional safety issues.

As Defendant points out, the Magistrate Judge twice states that Dr. Stolfi inspected the fryer at issue. *See* Dkt. No. 49 (R&R), pp. 32-33. The Court has reviewed the record. There is no evidence that Dr. Stolfi ever inspected the fryer. This finding by the Magistrate Judge was based on a vague statement made by Dr. Stolfi in his report that the fryer "*was inspected* on Thursday, Feb. 2, 2017 at 8:00 a.m. and photographs of the fryer were provided to [me]." Dkt. No. 46-3, p. 11 (emphasis added). Dr. Stolfi's wording is unclear whether he personally inspected the fryer or whether someone else did. However, the report predates his deposition, and at the deposition Dr. Stolfi explicitly testified that he never personally inspected any Pitco fryer and never laid hands on the subject fryer. As clarified by the Court during the oral argument, the parties explained that the Magistrate Judge misinterpreted Dr. Stolfi's statement in his report, as Dr. Stolfi was referring to the inspection of the fryer by Defendant's expert. The parties agree that Dr. Stolfi did not inspect the fryer.

As can be gleaned from Dr. Stolfi's report and deposition transcript, the material he reviewed in formulating his alternative designs consisted of deposition transcripts provided by the attorneys in this case, photographs of the deep fryer, manuals Pitco had online regarding the fryer, documentation provided by counsel (*i.e.*, the bill of sale of the subject fryer to Chipotle, the fryer's specification sheet, and the fryer's installation and operation manual), and "several things regarding responsibility of design engineers in terms of ethics." Other than reviewing said documents, he conceded that he did not do anything else to arrive at his opinions. *See generally* Dkt. No. 46-3; *see* Dkt. No. 44-11, p. 18. Dr. Stolfi states in his report

14

that "[t]he written material consulted for this report was either provided by Pitco to [plaintiff's counsel's firm] or freely obtained by the author from the Internet."  Dkt. No. 46-3, p. 11.

On the lack of testing, the Report and Recommendation refers to the Second Circuit case *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000) for the proposition that an expert "need not have conducted [his or] her own tests." In addition to Dr. Stolfi not performing any testing on his own, however, he did not rely on *others'* testing of the product.  Moreover, Defendant does not argue that lack of testing alone results in a flawed methodology in this case; rather, there is a confluence of factors from which the Court may conclude Dr. Stolfi's opinions are unsupported and unreliable.

And while testing is not required in any individual case, the Court may still consider that testing of a proposed alternative design "is the touchstone of what an engineering expert in a design defect case should do."  *Quintanilla v. Komori Am. Corp.*, CV 04-5227 (ETB), 2007 WL 1309539, 2007 U.S. Dist. LEXIS 33126, *18 (E.D.N.Y. May 4, 2007) (internal quotation marks and citations omitted), *adopted by* No. 07-2375-cv, 2009 WL 320186, 2009 U.S. App. LEXIS 2548, *4-5 (2d Cir. Feb. 10, 2009) (summary order) ("It was . . . not manifestly erroneous for the district court to rule that Stehlik's testimony was unreliable and speculative."); *see Fernandez v. Cent. Mine Equip. Co.*, 670 F. Supp. 2d 178, 187 (E.D.N.Y. 2009) (same) ("Anderson's failure to test his proposed alternative . . . to determine whether it would indeed provide a safer alternative and whether it would even be feasible so as

not to impact the utility of the machine, leads to the conclusion that his opinion is based on nothing more than speculation.").

In isolation, any of the shortcomings to Dr. Stolfi's "opinions" would not preclude him from testifying but rather would be a weight issue for the jury. However, when viewed together, the Court concludes that his opinions are not reliable and that there is no discernable method to his allegedly feasible alternative designs.  As explained further below, Plaintiff has failed to show that a safer product design was feasible, which is an element of the defective design cause of action. *See, e.g.*, *Toole v. Toshin Co.*, 00-CV-821S, 2004 WL 2202580, 2004 U.S. Dist. LEXIS 30061, *11 (W.D.N.Y. Sept. 29, 2004) ("[T]o establish a case for strict products liability under New York law, a plaintiff is required to prove the existence of a feasible alternative design that would have prevented the accident . . . Where a plaintiff's expert proposes testimony concerning alternative designs that are never put into application by the expert or any identified competitive manufacturer, the trial court is justified in excluding that expert's testimony.").

Moving on from reliability, the district court must also determine whether the expert's testimony on a particular issue will assist the trier of fact.  *See Nimely*, 414 F.3d at 396-397; Fed. R. Evid. 702.  "[A]n expert opinion that is not 'sufficiently tied' to the facts of the case and reliably applied to those facts does not adequately fulfill the requirements for admissibility."  *Bourassa v. Black & Decker (U.S.) Inc.*, 1:12-CV-1476 (FJS/CFH), 2015 WL 4715250, 2015 U.S. Dist. LEXIS 103672, *7 (N.D.N.Y. Aug. 7, 2015).

16

In the Report and Recommendation, the Magistrate Judge concluded that "Dr. Stolfi's report can assist the jury in determining both whether the fryer was sold in a reasonably safe manner, or if its inclination to tip, based on its unchallenged dimensions, rendered it unsafe, particularly given its intended use in a commercial kitchen that may be staffed with younger employees who may not perceive the danger in moving the fryer without first draining it of hot liquids."  Dkt. No. 49, pp. 34-35.

As is explained further below, in a design defect case the plaintiff must prove an element of causation.  In this case, Dr. Stolfi admitted that he was not offering an opinion on causation.  Dr. Stolfi decisively testified, "I wasn't tasked to figure out how the accident occurred," and agreed that, in other words, he was not retained to determine the reason for the accident.  Instead, Dr. Stolfi stated that he did not know whether Plaintiff hit an obstruction, whether Plaintiff turned the fryer at an angle when it tipped over or when he pulled or pushed it, how much force Plaintiff was pushing the fryer with, how much Plaintiff weighs, or how quickly he was traveling at the time of the accident.  When asked about the term "tendency to tip over" in his report, Dr. Stolfi further testified, "I don't know what happened in particular.  I do know the fryer tipped over."

The Second Circuit has noted that "the failure to test a theory of causation can justify a trial court's exclusion of the expert's testimony."  *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000) (per curiam) (holding that the district court did not err in finding plaintiff's expert witness's testimony was "speculative and unreliable" where he, among other things, "did not know precisely what happened

17

and where the boys were positioned in the time immediately preceding the accident, and had never attempted to reconstruct the accident and test his theory").

In his declaration in opposition to Defendant's motion for summary judgment, in stark contrast to his deposition testimony, Dr. Stolfi averred that Plaintiff's injuries "were caused by the aforesaid design defects."  Dkt. No. 46-3, ¶ 14.  The Court finds that Dr. Stolfi's opinions on causation in his report and declaration were stated in conclusory terms and appear to have been formulated for the purposes of litigation. *See Pinello*, 2011 U.S. Dist. LEXIS 34460, at *35 ("the Second Circuit [has] established the cardinal rule that a party cannot defeat a motion for summary judgment by proffering an affidavit that contradicts in material respects his prior sworn deposition testimony") (internal quotation marks and citations omitted).  As such, there is a lack of expert opinion evidence in this case regarding Plaintiff's design defect theory and causation.

Last, at oral argument, Plaintiff's counsel mentioned that Defendant did not submit an affidavit from its own expert in support of its motion for summary judgment, to call Dr. Stolfi's testimony into question.  The Second Circuit has squarely rejected this argument.  *See Brooks*, 234 F.3d at 91 ("The plaintiff's argument that [the district court's] gate-keeping role disappears when a proposed expert witness is not challenged by an opposing expert witness . . . runs counter to the thrust of *Daubert* and *Kumho Tire*."), citing *Kumho Tire Co., Ltd.*, 526 U.S. at 141.

In sum, the Court concludes the Magistrate Judge's decision that Dr. Stolfi's testimony is reliable and relevant, and thus admissible, is "clearly erroneous."  As

such, the Court grants Defendant's motion to preclude that testimony, and it will be disregarded by the Court in resolving Defendant's motion for summary judgment.

## II.     Defendant's Motion for Summary Judgment

### A.  *Strict products liability based on design defect and sale of a defective product*

"A manufacturer who places into the stream of commerce a defective product which causes injury may be liable for such injury . . . A defect in a product may consist of a mistake in manufacturing, an improper design or the inadequacy or absence of warnings for the use of the product." *Amatulli v. Delhi Const. Corp.*, 77 N.Y.2d 525, 532 (N.Y. 1991).  A strict products liability cause of action predicated on a design defect theory shifts the focus "from the conduct of the manufacturer to whether the product, as designed, was not reasonably safe." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (N.Y. 1983).  A defective design claim requires the plaintiff to demonstrate "that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Id.* at 108.

Typically, before a jury is the "risk-utility" balancing test, "balancing the risks inherent in the product, as designed, against its utility and cost," whereby it is determined whether a product as designed is "not reasonably safe" and, thus, defective. *Voss*, 59 N.Y.2d at 109.  In other words, "a plaintiff must establish not only that a different design would have led to improved safety, but also that adopting such a design would be 'economically and technically feasible.'" *Cuntan v. Hitachi Koki USA, Ltd.*, 06 CV 3898(RRM), 2009 U.S. Dist. LEXIS 127016, *16 (E.D.N.Y.

Sept. 14, 2009), *adopted by* 06-CV-3898 (RRM) (CLP), 2009 WL 3334364, 2009
U.S. Dist. LEXIS 126099 (E.D.N.Y. Oct. 14, 2009).  "If the 'utility' of a product 'does
not outweigh the danger inherent in its introduction into the stream of commerce,'
then the product is defectively designed." *Yun Tung Chow v. Reckitt & Colman, Inc.*,
17 N.Y.3d 29, 33 (N.Y. 2011), quoting *Voss*, 59 N.Y.2d at 107.

The plaintiff must also prove that the "defectively designed product caused his
injury and that the defect was the proximate cause of the injury."  *Voss*, 59 N.Y.2d at
109.  Proximate cause in this context means that "the defect was a substantial factor
in causing plaintiff's injury."  *Id.* at 110.

Plaintiff cannot prove the essential elements of the strict products liability/
design defect cause of action.  "Under New York law, a plaintiff seeking to establish
a design defect is generally required to provide expert testimony as to the feasibility
and efficacy of alternative designs."  *Cuntan*, 2009 U.S. Dist. LEXIS 127016, at *18-
19 (collecting cases); *see Bourassa*, 2015 U.S. Dist. LEXIS 103672, at *13
(dismissing the plaintiff's cause of action for defective design where the Court had
granted the defendant's motion to exclude the plaintiff's expert's testimony); *Valente
v. Textron, Inc.*, 08-CV-4192 (MKB), 931 F. Supp. 2d 409, 437 (E.D.N.Y. 2013)
("Having excluded the testimony of Plaintiffs' experts, Plaintiffs do not have any
evidence that the golf car had a defect — let alone that the defect was a substantial
factor in causing the injury — or any evidence of the feasibility of an alternative
design that would have prevented the accident."); *Toole*, 2004 U.S. Dist. LEXIS
30061, at * 21 ("If a plaintiff fails to offer proof of a safer alternative design, the

20

plaintiff's defective design claim is properly dismissed."), citing *Burgos v. Lutz*, 128 A.D.2d 496 (N.Y. App. Div. 1987).

Without his expert's testimony, Plaintiff cannot demonstrate the existence of a feasible alternative design, like the suggested weighted base, temporary handle, or locking lid, that would have prevented the accident.  He also cannot show that the lack of such design rendered the fryer unreasonably safe in that it was a substantial factor in causing his injuries.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's strict products liability claim.

### B. *Negligence*

Defendant's primary objection to the Magistrate Judge's recommendation that the negligence claim should proceed is that liability cannot be premised on speculation, and Plaintiff admits he does not know what caused the incident – aside from what Defendant characterizes as his admitted misuse of the fryer.  Defendant further explains that there were no eyewitnesses who testified about causation, and the surveillance video of the incident and the wheels on the fryer were not preserved.

The Report and Recommendation addresses negligence in terms of contributory negligence/ comparative fault, concluding that even if some fault for the incident is properly attributed to Plaintiff's actions (such as failing to abide by warnings that all liquids or hot liquids should be drained from the fryer before moving it), the proportion of fault assigned to Plaintiff is for the factfinder to decide and Plaintiff could still recover damages for Defendant's negligence.  Dkt. No. 49, pp. 12-

13.  Defendant argues, however, that comparative negligence is separate and apart from Plaintiff's failure to present any evidence regarding causation, which is Plaintiff's affirmative obligation.  In turn, Plaintiff argues that the Magistrate Judge's analysis is correct and "[i]ssues regarding foreseeability and causation must be determined by the jury."

While Plaintiff's Complaint frames the negligence cause of action in terms of both negligent design and other negligence-related theories, *see* Dkt. No. 1-2, pp. 9-10, it is apparent from Plaintiff's papers in response to the motion for summary judgment and in response to Defendant's objections that this cause of action is essentially based on Defendant's alleged negligent design of the fryer.

"In a defective design cause of action, a claim for negligent design defect is functionally synonymous with a claim for strict products liability with respect to the manufacturer."  *S.F. v. Archer-Daniels-Midland Co.,* 1:13-cv-00634, 2014 WL 1600414, 2014 U.S. Dist. LEXIS 55195, *22-23 n.6 (Apr. 21, 2014) (internal quotation marks and citations omitted), *affirmed by* 594 Fed. Appx. 11 (2d Cir. 2014) (summary order); *see Bourassa*, 2015 U.S. Dist. LEXIS 103672, at *3-4 (holding that where the plaintiff had "alleged no other negligent activity" beyond the defendant's design of the subject product, his cause of action for negligence was "duplicative" of his cause of action for defective design); *Valente*, 931 F. Supp. 2d at 437 n.24 ("In a design defect case, there is almost no difference between a prima facie case in negligence and one in strict liability.") (internal quotation marks and citations omitted); *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 107 (W.D.N.Y. Sept. 14, 2010) ("Although Plaintiff asserts his design defect claim under theories of strict

22

products liability and negligence, the same *prima facie* case is required under both theories."), *adopted by* 801 F. Supp. 2d 93 (W.D.N.Y. Mar. 10, 2010).

Under New York law, the elements of a *prima facie* case for negligence include (1) that the product's manufacturer owed the plaintiff a duty to exercise reasonable care; (2) a breach of that duty rendered the product defective, *i.e.*, reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage.  *See McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997).

The Court concludes that Plaintiff's negligent design claim fails for the same reason that his strict products liability claim does.  In simple terms, there is no evidence that the deep fryer's alleged top heaviness rendered the fryer unreasonably dangerous.  Even assuming, *arguendo*, that Defendant had a duty to protect Plaintiff against an accident where the fryer tipped over, without his expert's testimony, Plaintiff cannot establish that Defendant breached that duty by designing the fryer without, for example, a weighted base, temporary handle, locking lid, or some other alternative design element when the product was purchased with optional wheels.  In failing to establish a breach of duty—in other words, that the deep fryer was defective—Plaintiff cannot establish that a defect in the deep fryer was the proximate cause of his injuries.

The remainder of the record is likewise deficient on the issue of causation. Plaintiff testified that he did not know what caused him to fall.  He did not know whether a wheel on the fryer "locked up" or if a wheel hit an obstruction on the floor of the restaurant.  In his deposition, Plaintiff had no other explanation of how he fell.

And during oral argument on the objections, Plaintiff's counsel conceded the theory that one of the wheels "locked up" during the incident (the theory asserted in the Complaint, *see* Dkt. No. 1-2, ¶¶ 28-32, which the Court notes was never amended) had been abandoned.

Later, in opposition to Defendant's motion for summary judgment and in an apparent attempt to create a triable issue of fact on the element of causation, Plaintiff averred that he "believed one or perhaps both of the front wheels of the fryer locked up" and because his "hands were at the top of the fryer pushing it forward, when one or both of the front wheels locked up, [his] momentum continued to move forward and since [his] hands were close to the top of the fryer, the fryer tipped over. This caused [him] to trip over the fryer as it was falling to the ground.  As the fryer was tipping over, the top/ cover that [he] had placed over the fryer's vat fell off because it was not able to be secured to the fryer."  Dkt. No. 46-2, ¶ 9.  The Court concludes that this alleged sequence of events, the alleged catalyst of which was the abandoned wheels-locking-up theory, is speculative—and "neither conclusory statements, conjecture, nor speculation suffice to defeat summary judgment." *Hutton v. Globe Hoist Co.*, 158 F. Supp. 2d 371, 374 (S.D.N.Y. 2001), citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996).

Defendant's motion for summary judgment is granted as to Plaintiff's negligence claim.

### C. *Failure to Warn*

Plaintiff also seeks to hold Defendant liable in negligence and strict liability for its failure to provide adequate warnings.  Dkt. No. 1-2, ¶ 59 (alleging failure to warn

"by not advising [plaintiff] of the propensity for the front wheels of the PITCO Fryer to become locked and in not advising him of the propensity of the PITCO Fryer to tip over when being pushed from behind").

The Magistrate Judge recommends that the Court grant Defendant's motion for summary judgment on the failure to warn cause of action in part because "the presence of the hot oil in the fryer . . . was, as a matter of common sense, a danger that was readily apparent."  Dkt. No. 49, p. 36.[6]  But the Magistrate Judge also recommends that the Court deny the motion on the ground that there were no warnings advising of the fryer's "proclivity to tip" and spill its contents, especially when the fryer is full of hot oil and the contents of the fryer are not drained.  The latter hazard, the Magistrate Judge reasons, is one that a reasonable jury may find is not readily apparent to a user of the fryer and that Defendant failed to adequately warn Plaintiff of.  Dkt. No. 49, pp. 36-38.

In its objections, Defendant maintains that Plaintiff cannot establish liability based on a failure to warn theory because "[t]he subject fryer had warnings cautioning against the exact mechanism of Plaintiff's alleged burn injury—moving the fryer without first draining it—on both the front of the fryer and on the inside door of the fryer," and Plaintiff's alleged admission that he did not read any of the product

---

[6] "New York recognizes two circumstances in which a manufacturer has no duty to warn of known of foreseeable dangers: first, where the dangers are obvious; and second, where the user is fully aware of those dangers."  The latter is called the "knowledgeable user exception."  *Pinello*, 2011 U.S. Dist. LEXIS 34460, at *28-29.  "No duty to warn arises when the injured party is already aware of the specific hazard," through "general knowledge, observation or common sense."  *Wick*, 801 F. Supp. 2d at 106 (emphasis added, internal quotation marks and citations omitted).  When the plaintiff is aware of the specific hazard, "the failure to warn was therefore not a cause of the harm."  *Id.* (internal quotation marks and citation omitted).

warnings means he "cannot validly claim failure to warn or that he would have adhered to any additional warnings from Pitco."   Defendant also argues that Plaintiff has no expert to opine that Defendant's warnings were insufficient.   As to the Magistrate Judge's conclusion that the warnings claim should proceed because Plaintiff's expert raised a theory that the fryer had a "propensity to tip" when moved, Defendant asserts, among other things, that the Magistrate Judge did not acknowledge "the fryer is not supposed to be moved *at all* while it contained hot oil, such that *any risk* while being moved should not exist, nor should it involve any danger of coming into contact with hot oil" (emphases added).   At oral argument, Defendant maintained there is no need for a warning regarding the fryer's propensity to tip because there is no evidence to show the fryer had a propensity to tip.   Under any defense theory, according to Defendant, Plaintiff cannot establish proximate cause because alternative verbiage would not have made any difference to him.

In opposition, Plaintiff only generally argues that the adequacy of warnings is typically a question of fact to be determined by a jury.[7]

"Liability for failure to warn may be imposed based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient."   *Almonte v. Averna Vision & Robotics, Inc.*, 128 F. Supp. 3d 729, 752 (W.D.N.Y. Aug. 31, 2015) (internal quotation marks and citations omitted).   Again,

---

[7] In Plaintiff's opposition to the motion for summary judgment, he argued that the condition of the warning sticker on the front of the fryer (which appears slightly curled in the photographs) and/or prominence of that warning sticker are material questions of fact.   Dkt. No. 46, pp. 10, 16-17.   Because Plaintiff did not object to the Magistrate Judge's recommended findings, *i.e.*, that the existing warnings on the fryer and in the fryer's manual were a non-issue because "the presence of the hot oil in the fryer . . . was, as a matter of common sense, a danger that was readily apparent," that theory is deemed abandoned and the Court need not address it further.

the Magistrate Judge recommends that the failure to warn cause of action proceed only as to Defendant's "complete failure to warn of a particular hazard," namely, the fryer's "proclivity to tip"—and not proceed on the basis that the existent warnings were "insufficient," because such warnings were not required under the circumstances.  The Court concludes, however, that neither basis for liability may progress past the summary judgment stage.

"A defendant may be liable under a negligence or strict products liability theory by failing to adequately warn of a potentially harmful aspect of the product.  There is no difference between the prima facie elements of a failure to warn claim sounding in negligence and one sounding in strict products liability."  *Mustafa v. Halkin Tool, Ltd.*, 00-CV-4851 (DGT), 2007 WL 959704, 2007 U.S. Dist. LEXIS 23096, *63 (E.D.N.Y. Mar. 29, 2007), citing *Martin v. Hacker*, 83 N.Y.2d 1, 8 n.1 (N.Y. 1993) ("Where liability is predicated on a failure to warn, New York views negligence and strict liability claims as equivalent.").  "To succeed on a failure to warn claim, a plaintiff must prove that (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm."  *Black v. Covidien, PLC*, Case # 17-CV-6085-FPG, 2018 U.S. Dist. LEXIS 13185, *7 (W.D.N.Y. Jan. 26, 2018) (internal quotation marks and citations omitted).

As explained above, the wheels-locking-up theory was abandoned by Plaintiff, so his only remaining theory on this cause of action is that Defendant failed to warn of the fryer's alleged propensity to tip.  Without his expert, however, Plaintiff has no proof that the fryer had a "propensity to tip."  Plaintiff has also offered no proof that

Defendant's failure to warn of that allegedly hazardous condition caused his injuries. The Court hereby dismisses the failure to warn cause of action on this basis.

The Court will nevertheless briefly address in the alternative Defendant's argument that Plaintiff admitted he did not read any of the product warnings and therefore, as a matter of law, he cannot establish failure to warn.

"Under New York law, if a plaintiff admits that he failed to read a product's warnings, he cannot establish that the substantive language of the warnings caused his injury." *Cuntan*, 2009 U.S. Dist. LEXIS 127016, at *45 (collecting cases); *see Anderson v. Bungee Int'l Mfg. Corp.*, 96 Civ. 186 (MGC), 44 F. Supp. 2d 534, 539-540 (S.D.N.Y. 1999); *Warlikowski v. Burger King Corp.*, 9 A.D.3d 360, 361-362 (2d Dep't 2004); *Guadalupe v. Drackett Prods. Co.*, 253 A.D.2d 378, 378 (1st Dep't 1998).

Even with Plaintiff's admission that he did not read the subject warning labels—he testified that he did not "notice" the one on the front of the fryer—Plaintiff could plausibly be "allowed to proceed with a defective warning claim on the theory that had a warning been made sufficiently 'prominent or more dramatic,' he would have read and heeded it." *Cuntan*, 2009 U.S. Dist. LEXIS 127016, at *48. However, Plaintiff did not "propose an alternative warning that would have caused him to take notice and prevented the accident." *Id.* at *52. All the Court has in the record is Plaintiff's deposition testimony that he was following his manager's orders to move the fryer on the date of the accident, and his vague suggestion that he would have "[p]ossibly" read the warning sticker on the front of the fryer if it was not a "curled-up little thing." Indeed, while Plaintiff remembered the slight curling of the sticker as

being the state of the sticker on the date of the accident, Plaintiff was asked, "Am I correct that the curling does not make it illegible?"  Plaintiff replied, "Correct."  Thus, the one possible deficiency to the warning that Plaintiff pointed out, *i.e.*, the curling of the sticker, had no effect on whether Plaintiff could read that warning.  There are therefore no triable issues regarding if any additional warnings would have influenced Plaintiff to use the fryer differently, which would have, then, prevented the accident.

As such, Defendant is entitled to summary judgment on Plaintiff's claim for failure to warn, in its entirety.

## III.    Spoliation of Evidence

Defendant argues that Plaintiff is precluded from seeking to attribute any role in the accident to the wheels of the fryer because the wheels were lost or destroyed through no fault of Defendant's, and that this alone should result in summary judgment in Defendant's favor.  Defendant argues that Plaintiff's spoliation deprived it of the full and fair ability to investigate and present its potential defenses in this case, such as that the wheels were modified or poorly maintained or substituted with different wheels than the ones Defendant sold to Chipotle, which explains the happenings of the accident rather than any defect inherent in the wheels themselves.  Defendant also objects to the Magistrate Judge's conclusion that there is no indication the destruction or loss of the wheels or the surveillance video was at the directive of, or any way attributable to, Plaintiff's actions, and thus the spoliation doctrine is inapplicable in this case.  According to Defendant, governing precedent instead holds that spoliation is not dependent on assigning blame.  In other words,

29

Plaintiff himself need not have destroyed the material evidence for the doctrine of spoliation to apply.

The Court need not resolve this issue, as it has found in favor of Defendant's motion for summary judgment on other grounds.

The Court has carefully considered any remaining arguments advanced by the parties in this case and finds that they are either without merit or warrant no further discussion.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Magistrate Judge's Report and Recommendation is ADOPTED in part and REJECTED in part; Defendant's motion to preclude Plaintiff's liability expert is GRANTED; Defendant's motion for summary judgment is GRANTED in its entirety; and the Complaint is DISMISSED in its entirety, with prejudice.

The Clerk of the Court shall enter judgment in favor of Defendant and shall take all steps necessary to close the case.

**IT IS SO ORDERED.**


_\_\_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:   March 30, 2022
        Buffalo, New York